THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID DICKERSON, Appellant.

First Department, March 30, 1979

### APPEARANCES OF COUNSEL

*Judith Preble* of counsel *(William E. Hellerstein,* attorney), for appellant.

*David H. Fromm* of counsel *(Steven R. Kartagener* with him on the brief; *Mario Merola, District Attorney),* for respondent.

### OPINION OF THE COURT

LUPIANO, J.

While the dissent's narration of the facts is accurate and adopted herein, it is not complete insofar as resolution of the critical issue of identification is concerned. Mr. Colon, the complainant, testified at the *Wade* hearing that upon being permitted to leave his car and walking a few feet past its rear,

he turned around and observed defendant in the back seat looking at him. Defendant was observed by Mr. Colon to attempt to pull his hat down over his face, which action (common sense dictates) was a response generated by defendant's awareness that Mr. Colon was observing him, and it was necessary to engage in a precautionary act of rendering identification difficult. However, defendant succeeded only in pulling his hat down to his eyebrows. That defendant's belated endeavor to frustrate Mr. Colon's observation of him was unsuccessful or at most partially successful may be gleaned from the fact that Mr. Colon, on the basis of this view of defendant, was able to describe him to the police as a Black male with a short afro and a little mustache. Obviously, if complainant had never had occasion, however brief, to view defendant before he succeeded in pulling his hat down over his face to his eyebrows, complainant would not be able to describe the cut of defendant's hair.

At trial, complainant similarly testified that upon exiting his vehicle which was stationary during this critical juncture, he turned around and observed defendant, who was in turn looking at complainant. Mr. Colon then saw defendant attempt to pull his beach hat down so as to obscure his face. However, defendant succeeded only in forcing the hat down as far as his eyebrows, thus leaving for the entire interval of complainant's observation, his face fully exposed. Complainant sought refuge and the defendant and his cohorts departed with, among other things, complainant's car. This incident happened in the morning hours. Later, the night of that same day, two officers traveling in a police vehicle observed defendant at the wheel of this stolen vehicle. After pulling alongside the driver's side while the car was stopped for a red light, the officers drew their revolvers and ordered defendant to pull over. Instead, defendant slumped down in the seat and the stolen vehicle sped away with the police in pursuit. Crashing into a car stopped for a red light, defendant and his passengers jumped out of the stolen vehicle. Defendant, after exiting the car and falling on top a cohort, lifted himself up, took a step in the direction of the police car, which was a short distance away, and fled. The officers were unable to apprehend defendant. At trial, Officer Moruzzi stated that he was able to identify defendant because of his observations when the police car pulled alongside of the stolen vehicle and when defendant exited, fell, and fled from the stolen vehicle and escaped the pursuit by the police.

At this point emphasis is placed by this analysis upon (1) the fact that the victim's (complainant's) car was stationary during the period of his observation of defendant's face, and (2) the degree of particularity afforded by the complainant's (an experienced security supervisor) description of the defendant to the police. Thus, an independent basis for complainant's identification of defendant other than that derived from the complainant's identification of the defendant at the arraignment of Brown, patently exists. Additionally, we perceive no constitutional infirmity respecting complainant's identification of defendant (one day after the incident occurred) at the arraignment of Brown. Relevant to the propriety of permitting complainant to testify to his pretrial identification of defendant, are the following circumstances: The day following the crime, complainant, in the criminal court to sign a complaint, was invited by the police to view certain spectators on the right side of the courtroom during the arraignment of Brown to see if any of these spectators could be identified as fellow perpetrators of the crime. This was, in effect, a gamble, or hunch on the part of the police consistent with good police work that one of the escaped culprits might be present, and it paid off. The fact that defendant was in a group of three consisting of himself, another male and a female, is accidental, and while it renders the circumstances of the identification somewhat suggestive, this was an unavoidable concomitant of the inability of the police to control the courtroom scene. After all, the circumstance and reason dictate that the authorities did not know, indeed did not have a firm ground for suspicion, that one of those who had committed the crime but had escaped the subsequent police chase, would be present. It was a guess—a "shot in the dark" only. Also, the short interval between the commission of the crime and this pretrial identification by complainant the following morning is a factor tending to strengthen the reliability of the identification. As aptly noted in *People v Gonzalez* (61 AD2d 666, 670): "Reliability of identification is to be tested by a determination of whether under a totality of the circumstances there is 'a very substantial likelihood of irreparable misidentification.' *Simmons v United States* (390 US 377, 384); *Manson v Brathwaite* (432 US 98) and *Neil v Biggers* (409 US 188, 199-200) provide us with suggested guidelines for the determination of reliability such as 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the

criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation' ". While the pretrial identification of defendant by Mr. Colon, the complainant, partook of a certain, albeit unavoidable, degree of suggestiveness, it was not unduly suggestive and in light of the above standards governing reliability, emerges with a fairly high degree of probable reliability.

The testimony as to identification, both by the complainant and by the police ensuing from their subsequent partially successful attempt to capture the defendant, Brown and the others in the car chase, presented an issue of credibility for the jury. Such issue was properly presented to the jury as there was no substantial likelihood of misidentification. The circumstances of the pretrial identification as set forth in complainant's trial testimony follow: I met Officer Dugan "next to the complaint room" and after identifying myself, "he told me that he wanted to see if I could identify anybody in the courtroom. We then walked to the courtroom * * * He just told me to look on the right side and see if I could identify anybody. Then he said, 'One female with two males'. Then I went into the court. And I walked towards the front. And I turned around * * * I turned around to see if I could identify some one." After a minute or two and looking to my left "I observed two males and one female. They were sitting towards the front of the courtroom" among 15 to 20 people. I recognized the defendant, sitting "[t]o the right" of the female. There were people sitting in front and behind defendant. "I went back to the police officer" and "I told him that I was pretty sure that looked like the one that I—the one that was sitting behind me with the gun was the young fellow that was sitting on the left side of—and I pointed to the certain row where they were sitting at. So he sent me back in with the court officer so I could take a better look. And the court officer went with me to the front of the court." After I looked a second time, we went back to the police officer "[a]nd I told him that one on that side looked just like the young fellow who was sitting behind me with the gun to my neck. So they [defendant and another man] walked out of the courtroom * * * The officer asked me, 'Is it him or not?' I said 'Yes; this one is, but I couldn't tell you anything about the other one'." Defendant was "ten feet" from me and he was placed under arrest.

The minimal intrusion of the police into the complainant's process of attempting to see if he could identify another perpetrator who might be present at the arraignment of Brown, who was already caught, and the lack of haste on their as well as complainant's part evince a reflection which only serves to buttress the probability of a reliable identification.

Parenthetically, as a general observation, a culprit's criminal activity with its train of events, including identification and apprehension, presents a mosaic to the mental "eye." Upon subjecting this mosaic to the intense scrutiny demanded by the vital, but ever rigorous, legal principles, evidentiary and otherwise, operating in the criminal law, we find that the mosaic itself is sometimes lost sight of. Ofttimes the mosaic crumbles into minute fragments which bear little resemblance to the reality of that over-all picture in which they originally inhered. Again, reason relates that the particular experiences of our daily existence do coalesce into an ordered view, pattern, and a higher degree of comprehension. Thus we must not lose sight of the reality that the *entire* evidence adduced at the trial presented circumstantial and direct evidence much stronger than a one-witness identification case.

Apart from the complainant's testimony there is the testimony of Officer Moruzzi relating to his observation of defendant driving the vehicle stolen from complainant only 18 hours after the commission of the crime. Defendant, instead of heeding the police direction to stop the car, engaged in flight —reflective of a criminal awareness. The independent basis for Officer Moruzzi's identification of defendant at trial, provided by his opportunity to observe defendant when the police car pulled alongside the stolen vehicle and at the time of the crash of the stolen vehicle when defendant alighted and momentarily advanced in the officer's direction, clearly entitled the People to go to the jury on the issue of the credibility of the officer's in-court identification testimony.

The jury, by virtue of its verdict, found both the complainant and the officer credible. Even assuming "there is a fair conflict in the evidence or it is such that different inferences can be properly drawn from it, the determination of the jury will not be interfered with, unless it is clearly against the weight of evidence, or appears to have been influenced by passion, prejudice, mistake or corruption. [Citation.] If, in the judgment of this court, there were a rational doubt of the guilt of the defendant, it would not be a sufficient ground for

reversal. Under our system of criminal jurisprudence, it becomes the exclusive province of the jury to determine whether the evidence pointing to the guilt of the accused is so lacking in convincing force as to leave an intelligent and discriminating mind in doubt as to the truth of the charge contained in the indictment. When the jury, by their verdict, have declared that no such condition of mental uncertainty has arisen from a contemplation of the evidence, the prisoner has had the full benefit of the rule of law which protects him from punishment, unless his crime is established beyond a reasonable doubt, and the question is not open for review in this court, unless the case is so weak that the verdict should be set aside because against the weight of the evidence, or for other sufficient cause" (People v Taylor, 138 NY 398, 405-406). Giving credit to the common sense and reason of our fellow man who sits as a juror in fulfillment of the responsibilities which our system of justice bestows on him and fully indorsing the salutary effect of the right to a trial by one's peers as a safeguard against possible abuse of power by the State, we conclude that on this record affirmance is clearly warranted.*

Accordingly, the judgment of the Supreme Court, Bronx County (REILLY, J.), rendered November 18, 1977, convicting defendant, after a jury trial, of robbery in the first degree should be affirmed.

BIRNS, J. (dissenting). Defendant was convicted of robbery in the first degree and sentenced to a term of imprisonment of from 5 to 15 years. His conviction should be reversed and the indictment dismissed. The issues before us on appeal are whether the pretrial identification of defendant met constitutional standards and whether the in-court identification of defendant by Mr. Colon was from an independent source.

At about 4 A.M. on May 19, 1977, Robert Colon, Jr., the complainant, was robbed at gunpoint. He had just entered his car to travel to his place of business when a man with a gun forced him to open the door of the vehicle and four men entered. One of the men pushed Mr. Colon from the driver's seat and seated himself there. Another of the men sat down in the front passenger seat. Mr. Colon was seated between them.

---

* Of course, reason dictates that the jury, finding the complainant and Officer Moruzzi to be credible, would relate the fact of defendant's being observed to be operating the stolen vehicle only 18 hours after its theft with his subsequent flight to avoid detention, as further indicating his complicity in the original robbery and, in effect, as bolstering complainant's identification, albeit it did not need bolstering.

The two remaining men sat down in the back. The man in the driver's seat handed the gun to one of the men in the back seat, who kept pushing the weapon into Mr. Colon's neck. As the car started to move, the man in the front passenger seat took Mr. Colon's money and jewelry. After the vehicle traveled several blocks, it stopped. Mr. Colon was allowed to leave the car by the front passenger door. He did so and started walking past the rear of the automobile. After a few feet, Mr. Colon turned around and observed one of the men in the back seat look out the rear window and pull his hat down to his eyebrows. The car drove away, with the four men, leaving Mr. Colon behind.

In the evening of the same day, Mr. Colon's car was involved in a high-speed chase with police. Ronald Brown, codefendant on the robbery charge in this indictment, was apprehended in immediate flight from the vehicle. Another occupant of the stolen vehicle, allegedly defendant, also fled from the automobile, but was not captured.[1]

On the following day, May 20, 1977, Mr. Colon was asked by the police to come to criminal court to sign a complaint in connection with the theft of the automobile. Police Officer Dugan, the arresting officer, who was in court for Brown's arraignment, learned that two men and two women[2] whom he observed sitting on the right side of the courtroom, were present on behalf of Brown. Upon meeting Mr. Colon in the vestibule, the officer pointed to the right side of the courtroom where these people were sitting in a row and asked Mr. Colon whether he could recognize anyone.

Mr. Colon testified at the *Wade* hearing and on the People's direct case at trial that he met Police Officer Dugan at the entrance to the courtroom and that the officer directed Mr. Colon to look at the right side of the room to see whether he could identify anyone in the group of two males and a female seated there. Mr. Colon stated that he thereupon walked to the front of the courtroom and viewed the right side thereof for several minutes, that he returned to Officer Dugan and said he was "pretty sure" he recognized defendant as the one

---

1. Although the car was later dusted for fingerprints and Brown's fingerprints found inside, defendant's fingerprints were not found in the car.

2. There is a discrepancy between Police Officer Dugan's testimony and the testimony of Mr. Colon as to whether the group present in the courtroom for Brown's arraignment comprised two males and two females or two males and one female, but that discrepancy is not material to the issue.

who sat behind him with the gun, that Officer Dugan suggested Mr. Colon take another look and after observing the group of people again, Mr. Colon said defendant looked "just like" the person who sat behind him with the gun to his neck. Mr. Colon further testified that as defendant and his male companion proceeded to leave the courtroom, Mr. Colon, in response to Officer Dugan's request, stated that defendant was indeed one of the robbers. The officer then placed defendant under arrest.

Mr. Colon's pretrial identification of defendant should have been suppressed. The procedure eliciting such identification was impermissibly suggestive and the identification unreliable (cf. *Manson v Brathwaite,* 432 US 98). Officer Dugan had directed Mr. Colon's attention to the group sitting together on the right side of the courtoom. It cannot be said that this identification procedure, focusing on this small group of persons, two of whom were males, met constitutional standards (see *United States v Wade,* 388 US 218, 228-229; see, also, *Sanchell v Parratt,* 530 F2d 286, 292-293; cf. *Boyd v Henderson,* 555 F2d 56, 60, cert den 434 US 927). Although there were 15 to 20 people on the right side of the courtroom, the evidence does not disclose that there was any other group of two males and two females (or two males and a female) seated on the right side of the courtroom or that there were persons present on that side who bore a composite similarity to defendant in age, race and physical features so as to dissipate the suggestiveness of this showup. Additionally, Mr. Colon's first pretrial identification of defendant was not firm. His second identification was still uncertain. His third identification, for the first time, became positive. In the totality of the circumstances, the pretrial identification by Mr. Colon does not bear the hallmark of reliability (cf. *Manson v Brathwaite, supra*).

Mr. Colon's in-court identification of defendant should have been suppressed as well. During the automobile ride, Mr. Colon did not see the features of the man sitting in the back seat with the gun—Mr. Colon was facing towards the front and did not turn around while in the car. He first looked at that man when that man peered through the rear window of the vehicle after Mr. Colon was let out. The features of the man were obscured by a hat pulled down to his eyebrows. Mr. Colon stated that his observations took about a minute or two, a time estimate that appears unrealistically long considering

that the robbers were fleeing the scene in the automobile and Mr. Colon was running away in the opposite direction. Further, the incident occurred at about 4 A.M., and we are left to speculate as to the lighting conditions at the time.

I must conclude, therefore, that this identification was not reliable, that the People did not establish by clear and convincing evidence that Mr. Colon's in-court identification had an independent source (see *United States v Wade, supra,* p 241; see, also, *People v Ballott,* 20 NY2d 600, 606-607). It is not unreasonable to assume that said identification stemmed from the viewing of defendant at the arraignment of Brown which I would reject.

Since the identifications by Mr. Colon should have been suppressed, there remains insufficient evidence in the record to sustain defendant's conviction. Accordingly, the indictment should be dismissed.

MARKEWICH, J., concurs with LUPIANO, J.; EVANS, J., concurs in result; KUPFERMAN, J. P., and BIRNS, J., dissent in an opinion by BIRNS, J.

Judgment, Supreme Court, Bronx County, rendered on November 18, 1977, affirmed.