**Milton CHAVIS, Petitioner-Appellee,**

v.

**Robert J. HENDERSON, Superintendent, Auburn Correctional Facility, Respondent-Appellant.**

**No. 1437, Docket 80-2126.**

United States Court of Appeals, Second Circuit.

Argued July 25, 1980.

Decided Dec. 30, 1980.

Nancy B. Bensal, Deputy Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., of the State of New York, Gerald J. Ryan, Asst. Atty. Gen., New York City, of counsel), for respondent-appellant.

Dean Ringel, New York City (Cahill, Gordon & Reindel, New York City, Joseph I. Loonan and Gregg Young, New York City, of counsel), for petitioner-appellee.

Before VAN GRAAFEILAND and NEWMAN, Circuit Judges, and NEAHER, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

Robert J. Henderson, Superintendent of Auburn Correctional Facility, appeals from an order of the United States District Court for the Southern District of New York, directing that a writ of habeas corpus issue if petitioner was not granted a new trial within ninety days. On July 1, 1980, this order was stayed pending the determination of this appeal. We now reverse.

Petitioner was convicted of first degree robbery after a jury trial in the Supreme Court of the State of New York, Bronx County. He appealed through the New York State courts without success. On October 2, 1978, the United States Supreme Court denied his petition for certiorari. He then sought and secured relief in the district court. The following are the pertinent facts.

On March 31, 1975, Mrs. Oyala Soto entered her apartment building in the Bronx. As she waited for an elevator to take her to her fifth floor apartment, she observed a stranger in the lobby. Mrs. Soto described him at the trial as a goateed black man, about six feet tall, wearing a brown sweat-

* Of the Eastern District of New York, sitting by designation.

er, blue pants, black shoes, and a cap. She asked him whether he lived in the building and whether he was waiting for an elevator. He answered both questions in the affirmative. When the elevator arrived, the stranger held the door so that Mrs. Soto could enter. She thanked him but refused, preferring to wait for the next elevator.

However, Mrs. Soto's plan to ride singly and safely to the fifth floor was thwarted by the stranger, who stopped her elevator on the third floor and entering, knife in hand, informed her, "This is a holdup." She gave him her change purse, wallet and pocketbook, which together contained less than one dollar. Pocketing the "loot" the robber fled down the stairs. Mrs. Soto continued her unhappy journey to the fifth floor.

As she left the elevator on the fifth floor, she met her neighbor, Luciano Rodriguez, and told him of the robbery. Hoping to find the assailant, Rodriguez ran down the stairs and out to the street. There he saw a man whom he identified as appellee. He called to the man, who turned around, pulled out a knife, said, "It wasn't me, brother, it wasn't me", and ran off.

Rodriguez gave chase, keeping the man continually in view, except for a brief interlude when a bus passed between them. Concluding that the fugitive had gone to bay in a nearby bar, Rodriguez entered and found appellee sitting in a booth. Rodriguez' vociferous accusations induced an auxiliary policeman seated nearby to handcuff appellee and place him under arrest. When the trio reached the street, they were joined by two policemen who had been alerted by a passerby. In the meantime, the bar manager found a knife stuck behind the seat in the booth, which he gave to the police.

The police drove appellee and Rodriguez back to the apartment house. While appellee waited in the patrol car, Rodriguez and one of the officers went to Mrs. Soto's apartment to secure her assistance in identifying the suspected robber. Because Mrs. Soto did not speak English well and Rodriguez served as an unofficial interpreter,

there is some uncertainty as to what she understood the police officer to tell her. There is at least some indication, however, that she was led to believe the police had the culprit in custody. When she went out to the police car to view the suspect, she saw appellee sitting next to a uniformed police officer in the backseat of the car. She identified him then as the robber and repeated the identification when he stood outside the car. Rodriguez also identified appellee as the man he chased.

■ The district court, citing *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), concluded that the facts surrounding the identification gave rise to a substantial likelihood of misidentification. Responding to appellant's argument that suggestiveness alone does not require the exclusion of identification evidence, the district judge then proceeded to examine the "totality of the circumstances" to determine whether the identification, although suggestive, was reliable. *See id.* at 199–201, 93 S.Ct. at 382–83. Following the lead of the *Neil* Court, the district judge considered the following factors:

1) The opportunity of the witness to view the criminal at the time of the crime.

2) The witness' degree of attention.

3) The accuracy of the witness' prior description of the criminal.

4) The level of certainty demonstrated by the witness at the confrontation.

5) The length of time between the crime and the confrontation.

■ The district judge found the evidence associated with factors 1 and 5 to be supportive of reliability. We agree. As to factor 1, the facts of this case are strikingly similar to those of *Mysholowsky v. People*, 535 F.2d 194 (2d Cir. 1976), where we said at 197:

The length of time during which the victims of the robbery, Santorico and Mrs. Tully, could observe their assailant was well within the period that we have previously considered as sufficient to support a reliable identification. Mrs. Tully stood alongside the robber for about 45 seconds

while awaiting the elevator. She was suspicious enough of strangers to avoid riding on the elevator with them, and thus she would have observed the robber during this period more closely than had she been an uninterested bystander.

That Mrs. Soto's identification of appellee as the robber took place within one-half hour of their meeting in the lobby and the elevator is strongly supportive of reliability. As in *United States ex rel. Springle v. Follette*, 435 F.2d 1380, 1383 (2d Cir. 1970), *cert. denied*, 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 331 (1971), where the interval between crime and identification was also one-half hour, "[t]his fact of immediacy makes it much more likely that the witness will have a fresh recollection of the appearance of the suspect and hence that the identification will be accurate."

We disagree with the district judge's evaluation of factors 2, 3, and 4. In his discussion of factor 2, the district judge cited well-recognized authority to the effect that victims of crime are more likely than casual bystanders to notice the criminal's features. *See, e. g., Mysholowsky v. People, supra*, 535 F.2d at 197; *United States v. Mims*, 481 F.2d 636, 637 (2d Cir. 1973). He then held, however, that this observation, which is simply common sense, could not be made in this case, because, he said, Mrs. Soto suffered extreme emotional distress and "her degree of attention was diminished by extreme nervousness and agitation." We read the testimony differently. It shows, as might be expected, that Mrs. Soto was nervous and agitated immediately following the robbery in the elevator. However, she was calm and collected when she spoke with appellee in the lobby only moments before the robbery took place. Mrs. Soto was sufficiently interested in and curious about appellee at that time that she inquired of him whether he lived in the building. This, we suggest, was complete attention. Moreover, there is no showing that Mrs. Soto was any more nervous during the crime itself than any other holdup victim would be, or that her nervousness impaired her ability to observe appellee with whom she spoke concerning the mea-

ger contents of her purse. The testimony did not support the district court's finding that Mrs. Soto's degree of attention was impaired.

When the police, questioning Mrs. Soto through Mr. Rodriguez, asked her to describe the robber, she responded through Mr. Rodriguez that he was "a male black wearing dark clothing," a completely accurate, if not a detailed, description. In considering factor 3, the district judge treated Mrs. Soto's reply as if it were not a description and held that the "absence of a prior description is thus favorable to petitioner because it mitigates any finding of independent reliability."

This was error. The description given by Mrs. Soto was as complete as those given in *United States v. Coades*, 549 F.2d 1303, 1305 (9th Cir. 1977), where bank robbers were described as "two male Negros, one wearing a leather jacket," and in *United States ex rel. Craft v. LeFevre*, 432 F.Supp. 93, 98 (S.D.N.Y.1977), where the suspect was described as a "black male clad in denim." See also *United States v. Sanchez*, 422 F.2d 1198, 1199–1200 (2d Cir. 1970), and *United States ex rel. Tyrrell v. Jeffes*, 420 F.supp. 256, 263–65 (E.D.Pa.1976), *cert. denied*, 430 U.S. 958, 97 S.Ct. 1606, 51 L.Ed.2d 808 (1977), where no descriptions at all were given by the identifying witnesses, and *United States v. Howard*, 426 F.Supp. 1067, 1070 (W.D.N.Y.1977), where counsel did not inquire about the descriptions given prior to the show up.

■ Prompt confrontation between victim and suspect is consistent with good police work. *United States v. Sanchez, supra*, 422 F.2d at 1200. The reliability of an identification made in this manner should not hinge upon the existence of a prior detailed description of the suspect. While an inaccurate description may be an indication of unreliability, the absence of a detailed description in a situation where prompt police work permits little time for detailed inquiry, does not carry the same connotation. It is not, as the district court held, "favorable to petitioner."

The district court described Mrs. Soto's demeanor during the identification as "hysterical" and cited in support of this finding testimony that Mrs. Soto was "very nervous." Testimony as to nervousness does not support a finding of hysteria.

The district court also held in his discussion of factor 4 that it was impossible to determine whether Mrs. Soto was certain that appellee was her assailant or whether "she thought the police were telling her it [sic] was the assailant." We do not have the same problem with the proof. Mrs. Soto testified that the police officers asked her if the man in the car was the robber, that she identified him, and that when she did so she was positive he was the robber. Both police officers testified that Mrs. Soto was asked if appellee was the robber, and that she said he was. One of the officers testified that Mrs. Soto identified appellee twice, once when he was inside the car and once when he was outside. Obviously satisfied with the identification, the police officer then replaced the auxiliary policeman's handcuffs with his own. Unlike the district court, we find the certainty of Mrs. Soto's identification to be supportive of its reliability.

In summary, after reviewing the evidence in the five areas found significant by the Court in *Neil v. Biggers, supra,* 409 U.S. at 199–200, 93 S.Ct. at 382, we hold that under the totality of the circumstances the identification of appellee by Mrs. Soto was sufficiently reliable to meet the requirements of due process.

Appellee's alternate argument, that his arrest was without probable cause and that therefore the identification evidence should have been excluded, was properly rejected by the district court. Appellee made no showing in the district court that he had been precluded from a full and fair opportunity to litigate this issue in the state courts. Under *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), he may not urge the same grounds for federal habeas corpus relief.

The order appealed from is reversed.