**David DICKERSON, Petitioner,**

v.

**Walter FOGG, Superintendent, Eastern Correctional Facility, Respondent.**

**No. 81 Civ. 4303(MEL).**

United States District Court,
S. D. New York.

Dec. 4, 1981.

William E. Hellerstein, The Legal Aid Society, New York City, for petitioner; Judith Preble, New York City, of counsel.

Robert Abrams, Atty. Gen. N. Y., New York City, for respondent; Richard Howard, Deputy Asst. Atty. Gen., New York City, Juliana Maugeri, Legal Asst., of counsel.

LASKER, District Judge.

David Dickerson was convicted in the New York State courts of robbery in the first degree on November 18, 1977. He was sentenced to an indeterminate prison term with a minimum of five years and a maximum of fifteen years. He petitions for a writ of habeas corpus on the ground that his conviction was based on the unconstitutional admission of identification evidence secured through pretrial identification procedures which were so suggestive as to create a substantial likelihood of irreparable misidentification.

I.

Robert Colon, Jr. ("Colon") works as a security supervisor for Sloan's Supermarkets. Part of his job is to respond to alarms

at various Sloan's stores. On May 19, 1977, at approximately 4:00 A.M., he received a call at home to respond to an alarm at one of the stores. As he entered his car[1] on Jerome Avenue in the Bronx, a young man banged on the driver's window and pulled open the door. The man had a gun wrapped in a jacket. He ordered Colon to move over and open the front passenger door. Colon complied. As he was doing so, the first man took a seat behind the steering wheel, and another young man, since identified as Jeffrey Brown, entered the car through the passenger door. Colon then became aware that the rear doors were opening and that other people were entering and sitting on the back seat. Colon was told that it was a stick-up and the man in the driver's seat passed the gun to the man sitting behind him.

After the car pulled away, the man sitting in back of Colon held a gun to his neck. When a police car came into view, the gun was held down and Colon was warned that he had better stay quiet because the gun could shoot through the seat. At another point, the men threatened to kill Colon because they thought he was a police officer. Sometime during the ride, Brown took Colon's money and jewelry. During the entire ride, Colon did not look into the back seat. (App. at 136–141, 164–168, 181).

After proceeding for about seven or eight blocks, the car stopped and Brown let Colon out on the passenger's side. While walking back in the direction from which the car had been driven, Colon turned around and saw the left back seat passenger looking at him and trying to pull a hat down over his face. The hat came down only to the man's eyebrows. When Colon first saw this back seat passenger, the car was stationary. While he was watching, it began to pull away. (App. at 156–57, 182–85).

Colon reported the robbery to the police, who sent a patrol car. While Colon could not remember what he was asked by the police and specifically whether he was asked for a description of his assailants (App. at 169–70), Officer Dugan testified that, before identifying Dickerson, Colon had described the robbers as "four young black males" (App. at 67–69).

Some eighteen hours later, Police Officers James D. Dugan and Craig Moruzzi were on radio motor patrol on Seventh Avenue in Manhattan when they became suspicious of a car proceeding in the opposite direction. Moruzzi made a U-turn while Dugan radioed to determine whether the car was stolen. When they were informed that the vehicle was in fact stolen, they pulled up on its left and, at gunpoint, ordered the driver of the car to stop. Instead, the driver slid down in his seat below the window of the car and accelerated. The police chased the stolen car until it drove up behind a stopped car at the intersection of 153rd Street and Eighth Avenue. There the three occupants of the stolen car jumped out, fell to the ground, and then began running away. The stolen car itself crashed into another car stopped at the intersection. As the driver of the stolen car began to run, he first took a step toward the police car, and Officer Moruzzi again saw his face, as he had earlier when he had ordered the driver to pull the car over. Officers Moruzzi and Dugan chased the running men, Dugan chasing the front seat passenger and Moruzzi chasing the two men who had got out from the driver's side. Moruzzi was unable to apprehend the men he was chasing, but Dugan caught Jeffrey Brown. (App. at 12–19, 32–41, 83–89, 98–107, 113–25).

The following night, May 20, 1977, Brown was arraigned in Manhattan Criminal Court. Earlier, the police had phoned Colon and told him that his car—which was the stolen car—had been recovered. They requested that he come to the Manhattan Criminal Court at 8:00 P.M. to sign a complaint. (App. at 148, 170, 188). Dugan went to the court for the arraignment of Brown and planned to meet Colon there. Prior to Colon's arrival, Dugan learned that two men and one or two women[2] had come

---

1. The car was actually owned by Sloan's and used by Colon while on duty. (App. at 177).

2. There is a discrepancy between the testimony of Colon and Dugan as to whether the group

to attend Brown's arraignment.[3] (App. at 21–23, 53–57). When Colon arrived, Dugan met him, wearing Colon's security badge which had been found in Colon's car. (App. at 189). He told Colon the details of Dugan's arrest of Brown, including the fact that the car had been damaged in the chase. He also advised Colon that there were some people in the courtroom who had come to attend Brown's arraignment and that Dugan would like to see if Colon could identify any of them, (App. at 55–57).[4] Dugan then took Colon to the courtroom where the people who had asked for Brown were seated, directed Colon's attention to the "one female and two males," (App. at 150, 190) and asked Colon to go into the courtroom to "see if [he] could identify anybody." (App. at 150). Colon went into the courtroom, walked down the middle of the aisle towards the front, and then returned. He told Dugan that he was "pretty sure" that one of the men was the man who had sat behind him in the car and held the gun to his neck. (App. at 153). He did not recognize the other man. Dugan sent Colon back into the courtroom with a court officer for a "better look." (App. at 153). This time, Colon returned stating that one of the men "looked just like" the back seat passenger. (App. at 154). The two men whom Colon had been observing at Dugan's instruction then left the courtroom. When they walked by the spot where Dugan and Colon were standing, Dugan asked Colon, "Is it him or not?" (App. at 154). Colon said "yes" as to one of the men and that he couldn't tell anything about the other man. Dugan then placed the man Colon had identified, David Dickerson, under arrest in Colon's presence. (App. at 154–55).

Sometime after the Brown arraignment, Dugan discussed the case with Moruzzi, telling him of Colon's identification of Dickerson. (App. at 73–74, 127, 131–132). On June 14, 1977, Dugan showed Moruzzi seven police department arrest photographs of black males between the ages of 20 and 25. Each of the photographs bore the arrest dates of the subjects. Dugan asked Moruzzi if he could identify anyone or if he recognized anyone as the driver of the stolen vehicle who had not been apprehended on the night of the chase. Moruzzi identified the photos of Brown as the person who had been apprehended when they stopped the stolen car and of Dickerson as the driver of the car. Brown and Dickerson's pictures were the only ones bearing May, 1977, arrest dates. (App. at 28–32, 47, 75–76, 81–82, 91–92, 193).

Prior to trial the state court held a hearing on Dickerson's motion to suppress the identifications made by Colon and Moruzzi. After eliciting testimony to establish the facts above, the court found that the circumstances surrounding Colon's identification of Dickerson at Brown's arraignment were "entirely without any suggestiveness" (App. at 215) and that the identification of Dickerson was based on Colon's observation on the night of the crime. The hearing court also found that Colon had given the police a description of Dickerson. (App. at 212). With respect to Moruzzi's identification, the court found the photographic array to be unnecessarily suggestive and suppressed it, but denied Dickerson's motion to suppress Moruzzi's in-court identification. The court found that Moruzzi had a sufficiently independent basis to render an identification, based on Moruzzi's testimony that he was able to identify the photograph because he recalled Dickerson's face from his observation on May 20th. (App. at 213).

At trial, the state introduced Colon's arraignment identification as well as his in-

---

which had come for Brown's arraignment consisted of two males and two females or two males and one female. This discrepancy, however, is not material to the issue here. *See People v. Dickerson*, 67 A.D.2d 122, 128 n.2, 414 N.Y.S.2d 712 (1979) (Birns, J., dissenting).

3. Dickerson is Brown's cousin.

4. In his testimony at the state hearing, Colon did not recall Dugan informing him that Brown had been arrested or that the group to which Dugan directed his attention had come for Brown's arraignment. However, Dugan testified that he did relate this information to Colon prior to Colon's identification of Dickerson, and the hearing court included these facts in its findings. (App. at 214).

court identification of Dickerson, and Moruzzi's in-court identification. In addition to the evidence adduced at the suppression hearing, Colon testified that the hat he had seen the back seat passenger pull down was a beach hat (Tr. at 86), and that he might have initially reported to police that he would be able to identify only two of his four assailants. (Tr. at 133–34). All that Colon recalled of his initial description to the police was that it referred to "four black males," the same description that Dugan testified he had received. (Tr. at 129–30).

Dickerson was convicted. He appealed to the Appellate Division of New York, which affirmed the trial court by a vote of 3–2. *People v. Dickerson*, 67 A.D.2d 122, 414 N.Y.S.2d 712 (1979). The majority found that an independent basis for Colon's identification of Dickerson existed. It relied primarily on the fact that the car was stationary when Colon observed the back seat passenger and on Dickerson's description of the back seat passenger as a black man with a short afro and a little moustache. While the majority found the circumstances of Colon's identification of Dickerson "somewhat suggestive," *id.* at 124, 414 N.Y.S.2d 712, it considered the suggestiveness to be unoffensive since the police had no reason to suspect Dickerson or his companions and their request that Colon view them was accordingly a "shot in the dark." *Id.* at 124, 414 N.Y.S.2d 712. Furthermore, the majority found the short interval between the crime and the identification to be an index of reliability. The majority also found that the police did not intrude into Colon's process of identification and that Colon's failure immediately to give a positive identification "evince[d] a reflection which only serves to buttress the probability of a reliable identification." *Id.* at 124, 414 N.Y.S.2d 712. With respect to Moruzzi's identification, the court found that he had had a sufficient time to observe the driver of the car on the night of the car chase and that a sufficient basis independent of the photographic array existed for his identification. *Id.* at 126, 414 N.Y.S.2d 712.

The dissenters contended that the confrontation at Brown's arraignment was impermissably suggestive and that Colon's identification was unreliable. The dissenters emphasized that Colon was directed to a small group including only two black males and that his first two identifications were not positive. Finally, the dissenters disagreed that Colon's opportunity to observe on the morning of the crime provided an independent basis for the identification, since he could have observed the back seat passenger for only a few moments at night while his features were obscured by a hat.

On June 24, 1980, the Court of Appeals affirmed the Appellate Division's order of affirmance.

## II.

The due process clause of the Fourteenth Amendment requires that eyewitness identification evidence be suppressed if suggestive identification procedures have led to a " 'very substantial likelihood of irreparable misidentification.' " *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977), *quoting Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). This determination whether such eyewitness testimony should be suppressed rests on a balance between "the corrupting effect of the suggestive identification itself" and the weight of possible indicia of reliability which may be present, including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, the time between the crime and the confrontation." *Manson v. Brathwaite, supra*, 432 U.S. at 114, 97 S.Ct. at 2253, *citing Neil v. Biggers*, 409 U.S. 108, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972). Accordingly, the first issue is whether a suggestive identification procedure was employed. If the identification procedure is found to have been suggestive, the "central question" becomes "whether under the 'totality of the circumstances,'

the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers, supra* at 199, 93 S.Ct. at 382, *quoting Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

Dickerson argues that this analysis dictates that Colon's and Moruzzi's identification of him should have been suppressed. With respect to the Colon identification, Dickerson first contends that the confrontation at Brown's arraignment was highly suggestive. Dickerson emphasizes that immediately before the confrontation Colon was told that his car had been recovered, that someone had been arrested in connection with the robbery and was shown some of the property which had been in the car (his security shield). In addition, Dickerson argues that it was suggestive for the police to confine Colon's attention to the two men who had come for Brown's arraignment, especially since there were other and larger groups in the courtroom to whom the police could have directed Colon as well. Dickerson also contends that Colon's first identification was weak because it was tentative and that thereafter sending Colon for a "better look" and later still demanding a positive identification aggravated the suggestiveness of the procedure. Finally, Dickerson claims that by arresting Dickerson in Colon's presence, the police effectively confirmed to Colon that his identification was correct.

Dickerson next asserts that the *Biggers* indicia of reliability are lacking in this case. He argues that 1) Colon's opportunity to observe the back seat assailant was inadequate since it lasted only a few moments and took place at night through a car window while the perpetrator was attempting to obscure his face, 2) Colon's degree of attention was slight because he was unnerved after having had his life threatened and was concentrating on fleeing to safety, 3) Colon's description prior to the confrontation was too general to support the reliability of his identification, 4) Colon's level of certainty at the confrontation was low: he gave two tentative identifications and only with police prodding made a positive identi-

fication, and 5) while the time between the crime and the confrontation was short, this factor is of little weight in light of Colon's limited opportunity to observe his assailant and, in any event, was beyond the period immediately following a crime when a witness' memory is most reliable.

Dickerson also argues that Moruzzi's identification should have been suppressed under the *Biggers* test. He maintains that the photographic array shown to Moruzzi was highly suggestive in that Moruzzi's attention was directed to the particular case involving the arrest of Brown on May 20th, Moruzzi had been told that Colon had identified and the police had arrested another person the day after the Brown arrest, and the only photographs bearing May, 1977, arrest dates were the pictures of Brown, who Moruzzi had dealt with for an extended period on the night of Brown's arrest, and Dickerson. It follows, Dickerson claims, that the photographic display effectively constituted a one-picture show up with obvious suggestive qualities. Dickerson also argues that the *Biggers* factors cast doubt on the reliability of Moruzzi's identification. Dickerson emphasizes that 1) Moruzzi's opportunities to observe the driver of the stolen car were brief and occurred at night and at significant distances, 2) Moruzzi's attention was necessarily not focused on the driver of the stolen car since Moruzzi himself had to pay attention to his own driving of the patrol car, 3) Moruzzi gave no prior description of the driver, 4) there was no evidence as to Moruzzi's level of certainty, and 5) the lapse of nearly four weeks between Moruzzi's observation of the driver of the stolen car and his identification was significant.

The State, relying on the Supreme Court's recent decision in *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), responds that under 28 U.S.C. § 2254(d) the state courts' findings as to suggestiveness and reliability must be presumed to be correct since they included detailed findings as to the relevant factors and applied appropriate legal standards. According to the State, the Appellate Divi-

sion found that 1) Colon had an adequate opportunity to view his assailant's face on the night of the robbery, since the car was stationary for a few minutes, 2) as an experienced security guard, Colon paid adequate attention to his assailant's features, 3) Colon's description of the back seat passenger as a black male with a short afro and little moustache was accurate, 4) Colon's statements at Brown's arraignment evidenced caution and reflection rather than uncertainty, and 5) the lapse of one day between the crime and the confrontation was significant. Similarly, the State argues, the hearing court considered each of the relevant factors in finding that, although the photographic array shown to Moruzzi was highly suggestive, Moruzzi would be able to make an in-court identification independent of the suggestive identification procedure. It found that Moruzzi had observed the driver of the stolen car twice from as little as five feet away, that his degree of attention, as a police officer, was high, and that his description was based on his observation at the time.

Dickerson replies that the state court findings as to reliability and suggestiveness are not entitled to the presumption of correctness under 28 U.S.C. § 2254(d) because that statute does not apply to conclusions of law and because, in any event, the state courts' conclusions are not supported by the record. According to Dickerson, *Sumner v. Mata* only requires that the federal habeas court provide an explanation as to why § 2254(d) is inapplicable if the federal court does not accept the facts as found by the state courts. Dickerson also contends that the state courts did not make sufficiently detailed factual findings to forestall independent assessment by this court.

### III.

▮▮ The State's contention that the state courts' findings as to the alleged suggestiveness of the identification procedures employed by the police and the reliability of the witnesses' identifications must be pre-

sumed to be correct under 28 U.S.C. § 2254(d) as interpreted by the Supreme Court in *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), is unpersuasive. Section 2254(d) by its terms applies only to "a determination after a hearing on the merits of a *factual* dispute ..." (emphasis added). As the Supreme Court noted in *Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980), the presumption of correctness dictated by § 2254(d) does not apply to questions of law or to mixed questions of fact and law. As the Court stated, § 2254(d)

> refers "to what are termed basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators ...' "

*Cuyler v. Sullivan, supra* at 342, 100 S.Ct. at 1715, *quoting Townsend v. Sain,* 372 U.S. 293, 309 n.6, 83 S.Ct. 745, 755 n.6, 9 L.Ed.2d 770 (1963), *quoting Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.). Like the issue whether an attorney had engaged in multiple representation considered in *Cuyler v. Sullivan,* the issue whether the identification procedures employed here were suggestive and whether the identifications are nevertheless sufficiently reliable to satisfy due process requirements "is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case." *Cuyler v. Sullivan, supra* 446 U.S. at 342, 100 S.Ct. at 1715. Moreover, except for the finding concerning Colon's prior identification, discussed below, this decision accepts the historical facts found by the New York courts as correct. As we read *Sumner v. Mata, supra,* it does not change the established principle that a state court's conclusions of law are not binding on a federal habeas court, *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), except with respect to Fourth Amendment exclusionary rule claims, *see Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 2037, 49 L.Ed.2d 1067 (1976).[5]

---

**5.** Even if the state's reading of *Sumner v. Mata* is correct, we would reach the same conclusion

in this case. For the same reasons that we find the state court's conclusions legally erroneous,

## IV.

Turning to the merits of Dickerson's claims, we conclude that the in-court identification of Dickerson by Moruzzi was properly admitted into evidence, but that the identification of Dickerson by Colon should have been suppressed.

■ First, as the Appellate Division found, the identification of Dickerson at Brown's arraignment was suggestive. By focusing Colon's attention on the two black males and one or two black females who had come for Brown's arraignment, Dugan effectively employed a show up procedure with respect to Dickerson. A show up procedure in which the witness' attention is confined to a single suspect, is inherently suggestive. See, e. g., *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *Jackson v. Fogg*, 589 F.2d 108 (2d Cir. 1978); *Allen v. Estelle*, 568 F.2d 1108 (5th Cir. 1978); *Sanchell v. Parratt*, 530 F.2d 286, 294 (8th Cir. 1976); *Kirby v. Sturges*, 510 F.2d 397, 403 (7th Cir. 1975). While the procedure employed here was somewhat less suggestive than cases in which a single suspect is viewed, the fact that Dickerson was sitting with another black male cannot be said to have appreciably mitigated the suggestiveness inherent in Dugan's direction that Colon should consider only those two people amidst a courtroom of some twenty to fifty people. Like a show up involving a single suspect, a witness' choice between only two possible

suspects involves a similar "yes-no" procedure which is "much more conducive to unchecked guesswork than a procedure which requires the witness to choose among several potential defendants." Grano, *Kirby, Biggers, and Ash: Do Any Constitutional Safeguards Remain Against the Danger of Convicting the Innocent?*, 72 Mich.L.Rev. 717, 782 (1974).[6]

The fairness of Colon's identification was further undermined by Dugan's communications prior to the confrontation. These primed Colon to expect that one of his assailants would be included in the group to which Dugan directed his attention. When the police called Colon to come down to the Criminal Court, they told him that they had recovered his car. When he arrived there, Dugan was wearing the Sloan's security shield which Colon had kept in his car. Dugan told Colon the details of his arrest of Brown. And when Colon was asked to view the group including Dickerson, he was specifically told the group had come for Brown's arraignment and that he should see if he could identify any of them. Taken together, these factors created a context in which Colon more than likely believed that the police believed that one of Colon's assailants was sitting in the courtroom. By thus suggesting that one of Colon's assailants would be in the small group, Dugan unduly encouraged Colon to render an identification.[7]

---

discussed below, we also find the state court's findings as to reliability and suggestiveness to be unsupported by the record and therefore not entitled to a presumption of correctness under 28 U.S.C. § 2254(d)(8).

**6.** The State's contention that Colon's rejection of the black male sitting with Dickerson serves to bolster the reliability of his identification of Dickerson is unpersuasive in view of the lack of any evidence as to the companion's appearance. On the basis of the record, it cannot be said that Dickerson's companion was not rejected because he looked totally unlike any of Colon's assailants. In the circumstances, the identification procedure utilized here is analogous to a lineup of two people with no evidence that one of the persons had any features in common with the victim's assailants besides race and gender.

**7.** It is unclear under the Supreme Court's recent opinions relating to suggestive identification procedures whether due process considerations are only triggered when the procedures have been *unnecessarily* suggestive. While the Court in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) indicated that the admission of identifications procured through suggestive identification procedures would not violate due process standards if the suggestiveness was compelled by necessity, the Court's more recent focus on the *reliability* of the identification and the risk of misidentification in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 309 U.S. 108, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), would seem to indicate that necessity cannot remove the taint from an identifica-

The suggestiveness was further aggravated by Dugan's direction that Colon take a second and a third look after Colon was unable to make a positive identification upon the first viewing. By sending Colon in for a "better look" after Colon said that he was "pretty sure," Dugan necessarily encouraged Colon to make a positive identification of Dickerson and implicitly communicated his belief that Colon's leaning was correct. Similarly, Dugan's demand, upon the third viewing, for a positive identification constituted further pressure on Colon to identify Dickerson as his assailant. *See Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

Finally, the arrest of Dickerson in Colon's presence and based on Colon's identification served to confirm to Colon that his identification was correct. The practice of informing a witness that his identification was correct has been specifically condemned by the Court of Appeals of this Circuit as tending to taint an identification. *United States v. Jarvis,* 560 F.2d 494, 500 (2d Cir. 1977); *see also United States v. Leonardi,* 623 F.2d 746, 754–55 (2d Cir. 1980); *United States v. Danzey,* 594 F.2d 905, 915–16 (2d Cir. 1979).

## V.

■ Having determined that a suggestive identification procedure was employed, it becomes necessary to determine whether the corrupting effect of the suggestive identification procedure was nevertheless outweighed by the reliability of the identification. Applying the *Neil v. Biggers* factors, we conclude that Colon's identification did not possess sufficient indicia of reliability to overcome the suggestiveness of the criminal court arraignment confrontation.

First, Colon's opportunity to view the back seat passenger at the time of the crime was limited at best. As the Appellate Division concluded, Colon's estimate that he observed the back seat passenger for a minute or two was "unrealistically long." Common sense suggests that a more realistic estimate would be that Colon, who had just been released from the car in which his life had been threatened and where a gun had been held to his neck, remained at most for a few moments to observe the back seat passenger. Moreover, whatever the duration of Colon's observation of the back seat passenger, his opportunity to form an accurate mental picture was impaired by the fact that it was nighttime, by the tension of the moment, by the distance between himself and the car, by the rear window of the car, and by the hat itself which Colon testified that the man pulled over his head. Thus, while the shortness of the duration of the observation may not by itself impugn the reliability of Colon's identification, *see, e. g., Mysholowsky v. People,* 535 F.2d 194 (2d Cir. 1976), in the context of this case it cannot be said that Colon's opportunity to observe the back seat passenger significantly supports the reliability of his identification.

Second, while the New York courts did not specifically characterize Colon's degree of attention, the record reveals that Colon was extremely shaken by the experience and therefore may not have been paying strict attention to the back seat passenger's face. As Colon testified, he was still agitated when the police arrived at the scene and could not recall what questions they asked him. Although he is a trained security supervisor, the record contains no evidence that his job provided either the training or the opportunities for identifying people seen while under stress. Furthermore, unlike the witnesses in *Chavis v. Henderson,* 638 F.2d 534 (2d Cir. 1980) and *Mysholow-*

---

tion procedure which creates "a substantial likelihood of irreparable identification," *Manson v. Brathwaite, supra,* 432 U.S. at 116, 97 S.Ct. at 2254, *quoting Simmons v. United States, supra,* 390 U.S. at 384, 88 S.Ct. at 971. In any event, the procedures employed here were not compelled by necessity. Dugan could have easily sent Colon into the courtroom to

see if he recognized anyone without directing his attention to Dickerson and his companions or describing the details of Brown's arrest to Colon. Had Dugan done so, Colon would have had the opportunity to choose from among twenty to fifty people, rather than from a group of two.

*sky v. People,* 535 F.2d 194 (2d Cir. 1976), Colon did not have the opportunity to observe his assailant before the crime actually began. To the contrary, Colon's observation occurred only after he was put out of the car. Given the threats which the criminals had made, therefore, it is reasonable to conclude that Colon was at least partially distracted by the desire to ensure his safety and thus, despite the fact that victims of crime are more likely than casual by-standers to notice the criminal's features, *see Chavis v. Henderson, supra* at 537, and that Colon is a security supervisor, his degree of attention to his assailant also does not significantly support the reliability of his identification of Dickerson.

Nor does the accuracy of Colon's prior description sustain the reliability of his identification. Moreover, with respect to this factor, the presumption of correctness required under 28 U.S.C. § 2254(d) is overcome. In its findings of fact, the hearing court concluded that "the victim Colon was able to give a description of the two defendants who robbed him." (App. at 212). This conclusion is supported by the record. Dugan and Colon testified that the description given by Colon prior to the criminal court confrontation was that he was robbed by "four young male blacks." (App. 59–60, 64; Tr. 129–30, 204–06). However, the Appellate Division, in concluding that Colon's identification was reliable despite the suggestiveness of the confrontation, heavily relied on the proposition that Colon had given a more detailed description of the back seat passenger as a young male with a short afro and a little moustache. This finding of fact is not supported by the record and is therefore not entitled to the presumption of correctness under § 2254(d)(8). While Colon did testify to giving this description to the police at some time, he specifically testified that he could not recall whether this description preceded the suggestive viewing. (App. 174, 176, 192). On the other hand, Dugan testified that the only description he received prior to the criminal court confrontation was the description of "four young male blacks." Moreover, the description of the cut of the back seat passenger's hair

would not appear to be the result of Colon's opportunity to observe the back seat passenger on the night of the crime since Colon testified that during that time the assailant was wearing a beach hat which he was attempting to pull over his eyes and which would have hidden his hair, if nothing else. Thus, Colon's description of the man as a young black male with a short afro and little moustache may have been the product of the suggestive identification procedure itself, and therefore cannot support the independent reliability of Colon's identification.

The record does support the finding that Colon gave a description of "four young black males" to the police prior to the suggestive confrontation. However, this very general description of Colon's back seat passenger is not a significant indicator of the reliability of his identification. While "the absence of a detailed description in a situation where prompt police work permits little time for detailed inquiry does not carry the same connotation" as "an inaccurate description," *Chavis v. Henderson, supra* at 537, here there was no emergency which prevented the police from making a detailed inquiry as to the description of the back seat passenger. The police had at least three opportunities to obtain a more detailed description from Colon, first at the scene of the crime, second when he was telephoned to appear at the criminal court to make a formal complaint, and third when he actually met Dugan at the courthouse and before he went into the courtroom to observe Dickerson and his companions. None of these contacts with Colon presented the type of emergency which existed in *Chavis v. Henderson, supra,* and therefore it must be concluded that Colon's failure to give more than a most general description prior to the confrontation militates against the reliability of his identification.

The next factor to be considered is Colon's level of certainty at the confrontation itself. This factor also supports the petitioner's position. On the first viewing of Dickerson, Colon was only able to say that he was "pretty sure" that Dickerson was

the back seat passenger. After a second viewing at Dugan's direction, Colon said that Dickerson "looked just like" the back seat passenger. Only as Dickerson and his companion were leaving the courtroom and Dugan demanded a "yes or no" response did Colon render a positive identification. To be sure, these circumstances do not suggest that Colon was completely unsure about the identification at the time of the confrontation. They do, however, reveal that his level of certainty increased only with police prodding and therefore that his ultimate positive identification at the confrontation does not significantly support the independent reliability of the identification. *See Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

The final *Neil v. Biggers* factor—the length of time between the crime and the confrontation—does support the reliability of the identification. The crime occurred at approximately 4:00 A.M. on May 19, 1977. The confrontation occurred at about 8:00 P.M. on May 20th, about forty hours later. This length of time, however, is outside of the initial period immediately following a crime when a witness' memory is most likely to be reliable. *See* Levine and Tapp, The Psychology of Criminal Identification: The Gap From Wade to Kirby, 121 U.Pa.L.Rev. 1079–1100–01 (1973); *Chavis v. Henderson, supra.* Thus, while the factor supports the reliability of the identification, it does not add great weight, especially in light of the other factors discussed above.

■ In sum, we find that the identification procedures utilized in this case were suggestive and that, under the totality of the circumstances, it cannot be said that the identification was reliable despite the suggestiveness of the confrontation. Suppression is supported not only by analysis of the *Biggers* factors support suppression of the identification, but also by the fact that Dickerson was arrested in Colon's presence on the basis of the suggestive procedure. By thereby confirming the accuracy of Colon's identification, the arrest of Dickerson in Colon's presence increased the likelihood that any misidentification would be irrepa-

rable. Accordingly, the admission at trial of Colon's identification of Dickerson at the criminal court arraignment violated Dickerson's due process rights, as did the admission of Colon's in-court identification, which lacked an independent basis.

## VI.

■ With respect to Moruzzi's identification of Dickerson, we agree with the State that, although the photographic display was highly suggestive in that the only pictures bearing May, 1977 arrests dates were of Dickerson and Brown, a sufficient independent basis nevertheless existed for Moruzzi's in-court identification. Moruzzi had a sufficient opportunity to observe the driver of the stolen car on the night that he and Dugan chased the car and arrested Brown when the police car pulled alongside the stolen car and ordered the driver to pull over and when the occupants abandoned the car and the driver momentarily faced the police car before running away. Although each of these observations was brief and occurred at night on a city street, the time was adequate to form a mental impression of the driver's features. Indeed, Moruzzi testified at the state court suppression hearing that, at that time, he noticed that the driver was a black male, between the ages of seventeen and nineteen years of age, with a slender build and short hair and that it stood out in his memory that the driver's ears protruded away from his head. According to Moruzzi, his court identification of Dickerson was based on his recall of these features. While the complete absence of a prior description by Moruzzi is a serious factor militating against the reliability of his identification, the hearing court's conclusion that Moruzzi's testimony on this score was credible is entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Sumner v. Mata, supra; Cuyler v. Sullivan, supra.*

Moreover, as a police officer attempting to apprehend the driver of the stolen vehicle, it is reasonable to believe that Moruzzi's degree of attention to the driver was high. There was no finding or evidence as to

Moruzzi's level of certainty at the time he was shown the photographic array and thus this factor supports neither Dickerson nor the state. The fifth factor—the time between the event and the photographic array—is in Dickerson's favor since nearly a month elapsed between the chase of the stolen vehicle and Moruzzi's identification of Dickerson. Nevertheless, this period of time is not, by itself, sufficient to impugn the independent basis for Moruzzi's identification of Dickerson at trial. *See, e. g., Carnegie v. MacDougall*, 422 F.2d 353 (1970). Balancing the weight of these factors against the corrupting influence of the suggestive photographic identification procedures, we conclude that Moruzzi's in-court identification of Dickerson was sufficiently reliable so that its admission did not violate due process standards.

\*　　\*　　\*

Because we conclude that the admission of Colon's identification violated Dickerson's due process rights, Dickerson's petition for a writ of habeas corpus is granted unless within sixty days the State grants him a new trial in which Colon's identifications of Dickerson are not admitted into evidence.

It is so ordered.