### STATE OF CONNECTICUT *v.* LARRY HOLLIMAN
### (13625)

HEALEY, SHEA, GLASS, COVELLO and HULL, Js.

Argued December 7, 1989—decision released February 20, 1990

*Katherine C. Callahan,* with whom, on the brief, was *Paul R. Kraus,* for the appellant (defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* assistant state's attorney, for the appellee (state).

HULL, J. A jury found the defendant guilty of sexual assault in the first degree in violation of General Statutes § 53a-70 (a),[1] robbery in the first degree in violation of General Statutes § 53a-134 (a) (1),[2] and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A).[3] The trial court thereupon sentenced him to a total effective sentence of forty years incarceration. On appeal from this judgment, the defendant claims that the trial court erred in: (1) denying his pretrial motion to suppress the victim's identification; (2) failing to exclude the victim's identification on the ground that its prejudicial effect outweighed its probative value; and (3) admitting at trial certain irrelevant and prejudicial testimony of a witness. We find no error.

The jury could reasonably have found the following facts. At approximately 8 p.m. on March 11, 1988, the victim, J, left her home in West Haven to walk to the nearby Nutmeg Farms Store to buy groceries for her mother. To get from her house to the store, J took a short cut through a wooded area that led to the back of the store. As she entered the Nutmeg Farms Store, a man, later identified as the defendant, who was sitting in a car parked on the side of the building, beeped

[1] General Statutes § 53a-70 (a) provides: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[2] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime . . . ."

[3] "[General Statutes] Sec. 53a-92. KIDNAPPING IN THE FIRST DEGREE. (a) A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

the car's horn at her. J paid little attention to the defendant and proceeded into the store to buy the groceries. After making her purchases, J walked out of the building and toward the path to return home. She noticed that the defendant was no longer in his car.

Although it was dark outside, floodlights dimly illuminated the rear area of the store. As J reached the edge of the building, she saw the defendant emerge suddenly from between two storage trailers kept behind the store. The defendant immediately struck J in the face and began choking her. He then pressed a screwdriver to her neck and told her that if she did not shut up he would kill her. After dragging her to the darker area between the two storage trailers, the defendant sufficiently undressed J to fondle her breasts and place his fingers in her vagina. He then engaged in vaginal intercourse with her. The defendant ultimately fled from the area, taking with him J's groceries and approximately $12.30.

J then walked along the path to her home and police were summoned. Thereafter, she went to Yale-New Haven Hospital where physical evidence confirmed that she had been sexually assaulted.

Since the process by which J identified the defendant as her assailant is central to each of the defendant's claims on appeal, we will detail the facts of the identification. On the afternoon of March 11, 1988, the day that J was assaulted, A, a friend of J's sister, was in the Nutmeg Farms Store. As she left the store, she walked past the defendant, then unknown to her, who was with some friends and was putting gas into his car. The defendant, in an attempt to engage A in conversation, asked her her name, where she lived, if she wanted to go out, and if she wanted some beer. While testifying at trial, A characterized the defendant's behavior as a "pass." She ignored the defendant and

walked away. As she headed home, however, she saw the defendant following her in his car. Later that evening, before 8 p.m., the defendant rang the doorbell at A's house. A looked out the window, recognized the defendant as the person whom she had earlier seen at the Nutmeg Farms Store, and told him to leave. The defendant returned to his car and then drove away.

Approximately fifteen minutes later, A walked to the Nutmeg Farms Store to use the public telephone that was located outside the store. When she arrived at the store, she saw the defendant's unoccupied car parked near the woods. As A was preparing to use the telephone, she thought that she heard noises in the woods. Frightened by the noises, she called a friend who came to the store to give her a ride. When A learned the next day that J had been attacked the previous evening in the vicinity of the woods behind the Nutmeg Farms Store, she immediately suspected the defendant.

On April 2, 1988, at approximately 10 a.m., A again saw the defendant at the Nutmeg Farms Store. The defendant was getting gas and had several women and children in his car. When he noticed A, the defendant turned his head and tried to avoid her. A immediately called J's house and J's sister and father drove to the store. By the time they arrived, however, the defendant had driven away in the direction of the town of Orange. A consequently got into the car with J's sister and father, and they drove off in search of the defendant. Shortly thereafter, they located the defendant's car in the parking lot of the Stop and Shop supermarket in Orange. The defendant was alone in the car. A and the others decided to go back to West Haven to get J.

When they returned with J to the Stop and Shop parking lot, A pointed to the defendant and asked J: "[I]s that the guy?" After A repeatedly asked J if the

defendant was the man who had assaulted her, J indicated that he was. J also recognized the defendant's car as the one that had been parked outside the Nutmeg Farms Store on the night of her assault. A, J and the others waited for the defendant's companions to emerge from the supermarket, and then followed the car to a post office in New Haven. When the defendant went inside the post office, A, falsely identifying herself as J's sister, called the New Haven police.

New Haven police officer Robert Crisci was sent to the area of the post office to see a female about a sexual assault. He was met by either J's sister or A who described the defendant's car and told Crisci that the defendant had been involved in a sexual assault. Crisci eventually followed the defendant's car a short distance and pulled it over. The defendant was arrested after a brief foot chase as he fled from the scene.

## I

The defendant first claims error in the trial court's failure to suppress J's pretrial identification of him as the man who had assaulted her on March 11, 1988. The defendant filed a motion to suppress the identification prior to the commencement of trial. Following an evidentiary hearing, the court denied the motion, concluding that there was no indication of "anything impermissibly suggestive on the part of [the] police in this matter." The defendant argues that the identification procedure conducted by A was unnecessarily suggestive and that J's resulting identification was so unreliable that its admission into evidence at trial deprived him of his right to due process of law as guaranteed by the fourteenth amendment to the United States constitution.

## A

The defendant asserts a violation of his rights under the due process clause of the fourteenth amendment

to the United States constitution. This amendment provides in pertinent part that "[n]o *State* shall . . . deprive any person of life, liberty or property, without due process of law." (Emphasis added.) The state contends that the defendant's claim is not cognizable under this provision. We agree.

"Because the [fourteenth] [a]mendment is directed at the states, it can be violated only by conduct that may be fairly characterized as 'state action.' " *Lugar* v. *Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). "[T]he Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities." *Rendell-Baker* v. *Kohn,* 457 U.S. 830, 837, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982). "The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." *Colorado* v. *Connelly,* 479 U.S. 157, 166, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); see *State* v. *Villafane,* 171 Conn. 644, 657–58, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part, *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 597 (1984) (purely spontaneous on-street confrontation between the defendant and a witness to a holdup *was not conducted by the police* and thus did not violate the defendant's right to due process); *State* v. *Nims,* 8 Conn. App. 631, 637, 513 A.2d 1280, cert. denied, 201 Conn. 812, 516 A.2d 887 (1986) (the viewing of the defendant while he was awaiting trial by a witness to the incident in question *was not prearranged and was not in any way contrived by the police or the prosecuting authority* and thus did not violate the defendant's right to due process).

Notwithstanding this precedent, the defendant claims that the right to due process may be implicated by unnecessarily suggestive pretrial identification procedures even in the absence of state action. The defendant relies as authority for his position primarily on *Manson* v. *Brathwaite,* 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). According to the defendant, the early United States Supreme Court cases concerning the exclusion of identifications obtained through unnecessarily suggestive pretrial identification procedures; *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967); *Gilbert* v. *California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967); *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967); were decided on a "deterrence of police misconduct" rationale. The defendant argues, however, that *Manson* v. *Brathwaite,* supra, 116, in which the court held that evidence resulting from impermissibly suggestive police procedures would not be excluded if it were shown to be reliable based on the totality of the circumstances, shifted the focus of due process analysis from the deterrence of police misconduct to the reliability of the evidence in question. The defendant thus claims that since unreliable identifications may result from unnecessarily suggestive pretrial identification procedures conducted by private individuals, the protection of the due process clause is applicable.

The defendant then cites two cases in which he claims that the courts, relying on the *Manson* shift in analytical focus, found due process violations even though no state action was involved. *Chavis* v. *Henderson,* 488 F. Sup. 325 (S.D.N.Y.), rev'd in part, 638 F.2d 534 (2d Cir. 1980), cert. denied, 454 U.S. 842, 102 S. Ct. 152 70 L. Ed. 2d 125 (1981); *People* v. *Walker,* 97 Misc. 2d 171, 411 N.Y.S.2d 156 (1978). We find neither of these cases to be supportive of the position espoused by the defendant. *Chavis* involved a civilian who, accompanied

by a police officer, went to the apartment of the victim of a mugging in an effort to obtain an identification from the victim. Acting as an interpreter, the civilian persuaded the victim to go outside to make the identification. The victim then identified Chavis, who was handcuffed and seated beside a police officer in the back seat of a marked police car, as her assailant. *Chavis* v. *Henderson,* supra, 327. The identification was found, on a petition for a writ of habeas corpus, to be unreliable[4] because of "the highly suggestive identification procedures in which *both the police and the interpreter were involved.*" (Emphasis added.) Id., 336. The decision in *Chavis,* therefore, in which actions by the police and a private citizen were inextricably intertwined, does not support the defendant's position that purely private action may give rise to a federal due process claim. Likewise, the decision of *People* v. *Walker,* supra, although it involved an identification procedure conducted exclusively by private individuals, does not support the defendant's position. The New York court determined that *under state statutory law,* such a procedure could constitute "grounds" for the suppression of the resulting identification. Id., 172–73. The court did not find that the procedure gave rise to a claim under the fourteenth amendment, but rather merely employed federal due process standards as a guide in determining the admissibility *under state law* of the civilian-induced identification. Id., 173.

Despite the defendant's claim to the contrary, it is well established that conduct that may fairly be characterized as state action is a necessary predicate to a challenge under the due process clause of the fourteenth amendment to the United States constitution. The defendant has failed to identify any state action in the

---

[4] This finding was subsequently reversed by the Second Circuit Court of Appeals. *Chavis* v. *Henderson,* 638 F.2d 534 (2d Cir. 1980), cert. denied, 454 U.S. 842, 102 S. Ct. 152, 70 L. Ed. 2d 125 (1981).

pretrial confrontation between J and the defendant. Accordingly, the trial court's denial of the defendant's motion to suppress J's identification and the subsequent admission into evidence at trial of that identification did not violate the defendant's right to due process of law.

## B

At oral argument, both the state and the defendant agreed that even if the defendant's claim has no constitutional underpinning, the criteria established for determining the admissibility of identifications in the due process context are appropriate guidelines by which to determine the admissibility of identifications that result from procedures conducted by civilians. We also agree.[5] Accordingly, we will engage in the two-pronged inquiry traditionally applied to identifications involving state action to determine the admissibility at trial of J's identification. " ' " '[F]irst, it must be determined whether the identification procedure was unnecessarily suggestive, and second, if it is found to be so, it must be determined whether the identification was nevertheless reliable based on an examination of the "totality of the circumstances." ' " *State* v. *Ramsundar,* 204 Conn. 4, 10, 526 A.2d 1311 (1987), quoting *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); [see *Manson* v. *Brathwaite,* supra, 113–14;] see also *State* v. *Cubano,* 203 Conn. 81, 93, 523 A.2d 495 (1987);

---

[5] The trial court made no specific findings with respect to "suggestiveness" and "reliability." The defendant's motion to suppress addressed improper police action, and the pretrial hearing on the motion was so limited. When the court denied the motion to suppress, it stated that there was no indication of "anything impermissibly suggestive on the part of [the] police in this matter." Since we conclude for the first time in this case that the criteria traditionally applied in the due process context are applicable to the determination of the admissibility of evidence resulting from identification procedures conducted by a private individual, we will not refuse review of the defendant's claim on the ground that it espouses a theory not raised below.

*State* v. *Collette,* 199 Conn. 308, 310, 507 A.2d 99 (1986); *State* v. *Hinton,* 196 Conn. 289, 292–93, 493 A.2d 836 (1985). . . .' " *State* v. *Pollitt,* 205 Conn. 132, 162, 531 A.2d 125 (1987).

We turn first to the question of whether the identification procedure was unnecessarily suggestive. "The show-up, or one-to-one confrontation between a victim and the suspect police present to him, has been deemed 'inherently and significantly suggestive; *State* v. *Middleton,* 170 Conn. 601, 608, 368 A.2d 66 (1976); because it conveys the message that the police have reason to believe the suspect guilty. *State* v. *Willin,* 177 Conn. 248, 251, 413 A.2d 829 (1979).' *State* v. *Maturo,* 188 Conn. 591, 595–96, 452 A.2d 642 (1982); see also *State* v. *Guertin,* 190 Conn. 440, 456, 461 A.2d 963 (1983)." *State* v. *Mitchell,* 204 Conn. 187, 201, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). The state concedes that the identification procedure at issue in the present case was likewise suggestive in that A pointed to the defendant and asked J: "[I]s that the guy?" The existence of suggestive circumstances does not, however, end our inquiry. We must further determine "whether such circumstances were impermissible or unnecessary. See *Stovall* v. *Denno,* [supra, 302]." Id. The defendant argues that they were. As the basis for his position, he relies on the testimony that A repeatedly pointed to the defendant while asking J if he was the man who had assaulted her. The defendant claims that this attempt by A "to foist her unilaterally formed impressions of who [had] assaulted [J] on [J]" rendered the identification procedure impermissibly suggestive.

The state argues, however, that even a suggestive procedure orchestrated by the police is permissible if exigent circumstances compel its use; *State* v. *Gordon,* 185 Conn. 402, 414, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982);

and that exigency should likewise permit a suggestive identification procedure orchestrated by a private individual. We agree. In the past, when we have been faced with the question of whether an exigency existed, we have considered such factors as whether the defendant was in custody, the availability of the victim, the practicality of alternate procedures and the need of police to determine quickly if they are on the wrong trail. See *State* v. *Mitchell,* supra, 202; *State* v. *Hamele,* 188 Conn. 372, 377, 449 A.2d 1020 (1982); *State* v. *Gordon,* supra, 414–15; *State* v. *Theriault,* supra, 373. In the present case, the defendant was not in custody. A. had no apparent power physically or legally to detain the defendant without J's identification of him. While J's availability was not a factor, the defendant's availability certainly was. A did not know the suspect by name, nor did she know whether she would ever see him again. Under the circumstances, no practical alternate procedures were available to A. She obviously could not detain the defendant to arrange a line-up or photographic array. Furthermore, if A had called the police, as the defendant suggests, their probable response would have been to ask whether the *victim* had identified the man, because without J's identification it is doubtful that the police would have had probable cause to arrest the defendant. Finally, it was important to society and possibly to innocent suspects that A's suspicion be quickly confirmed or dispelled. We therefore conclude that under the circumstances here presented, a prompt one-to-one confrontation was necessary and permissible. A's actions were those of a reasonable citizen concerned about a serious crime committed upon a fellow citizen.

As stated previously, in order to prevail on his claim that J's identification was inadmissible at trial, the defendant must demonstrate *both* that the identification procedure was unnecessarily suggestive and that

the resulting identification was not reliable based on an examination of the totality of the circumstances. *State* v. *Pollitt,* supra, 162. "Only if the procedures used to identify the accused are unnecessarily suggestive are we required to analyze the factors that determine the reliability of an identification . . . . *United States* v. *Amrine,* 724 F.2d 84, 87 (8th Cir. 1983); *United States* v. *Hurt,* 476 F.2d 1164, 1168 (D.C. Cir. 1973); *State* v. *Amarillo,* 198 Conn. 285, 294, 503 A.2d 146 (1986)." *State* v. *Miller,* 202 Conn. 463, 470–71, 522 A.2d 249 (1987). Since we conclude that the identification procedure was not unnecessarily suggestive, we will not gratuitously lengthen this opinion by considering the reliability of the resulting identification. The trial court did not err in denying the defendant's motion to suppress J's pretrial identification.[6]

## II

We now turn to the defendant's evidentiary claim concerning A's testimony. A testified at trial that, inter alia, she had seen the defendant at the Nutmeg Farms Store on the afternoon of March 11, 1988, that he and his friends had made some "passes" at her, and that the defendant had ultimately followed her home. The defendant argues that the trial court erred in admitting into evidence A's testimony concerning the "pass" allegedly made at her by the defendant, because it was irrelevant and highly prejudicial. We do not agree.

Initially, we note that only one portion of the defendant's contact with A on March 11, 1988, was referred

---

[6] The defendant makes the additional claim that the court should have excluded the testimony concerning J's identification because the prejudicial effect of that testimony outweighed its probative value. The defendant argues that the nature of the identification procedure conducted by A caused J's identification to be of little probative value. We have fully discussed the evidentiary impact of A's actions. The defendant's additional claim adds only the argument that the significance of the testimony renders it impermissibly prejudicial. We find no merit to this claim.

to during testimony at trial as a "pass." A stated at trial that she had walked to the Nutmeg Farms Store on the afternoon of March 11, 1988, and that the following had occurred: "And I noticed this guy, [the defendant], and his friends were making passes at me and trying to talk to me, asking me do I want to go out, this and that, this and that." This incident that allegedly occurred while the defendant was putting gas in his car was the only incident that the defendant, in his statement of facts, associates with the term "pass." Therefore, we limit our discussion of the defendant's claim to this particular testimony.[7]

" 'Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in determination of the issue. . . . ' State v. Schaffer, 168 Conn. 309, 317, 362 A.2d 893 (1975), quoting Federated Department Stores, Inc. v. Board of Tax Review, 162 Conn. 77, 82, 291 A.2d 715 (1971)." State v. Sharpe, 195 Conn. 651, 659, 491 A.2d 345 (1985). The trial court is given broad discretion in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion. State v. Parker, 197 Conn. 595, 601, 500 A.2d 551 (1985).

The defendant's verbal remarks and actions characterized by A as "passes" focused A's attention on the defendant as well as on the car into which he was putting gas. It was in great part this incident that allowed

---

[7] The defendant's claim, as briefed and as argued at trial, is not one involving the general rule against admissibility of prior misconduct evidence. See C. McCormick, Evidence (2d Ed. 1972) § 190.

A later to identify both the defendant and his car. Because A's identifications were relevant to the case, "[a]ny evidence materially bolstering [her] identification[s] . . . would necessarily be of importance. *Robinson* v. *United States,* 459 F.2d 847, 857 (D.C. Cir. [1972]); see *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639 [1967]." *State* v. *Brown,* 169 Conn. 692, 701–702, 364 A.2d 186 (1975). A's identifications of the defendant and his car were relevant for two reasons. First, A saw the defendant's car parked by the woods the night that J was assaulted. The fact that his car was at the Nutmeg Farms Store in West Haven contradicted the defendant's alibi defense, notice of which alleged that he was in New Haven at the time of the assault. Second, her ability later to recognize him as the man who earlier in the day had been putting gas in the car and earlier that evening had been driving the car, gave her reason to bring the defendant to J's attention, and placed in context for the jury J's identification of the defendant. Therefore, the trial court did not abuse its discretion in determining that the challenged testimony was relevant.

The defendant argues in the alternative that even if the testimony was relevant, the trial court should have excluded it because its prejudicial effect clearly outweighed its probative value. We have held that "[t]here are situations where the potential prejudicial effect of relevant evidence would suggest its exclusion. These are: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it. McCormick, Evidence (2d

Ed.) § 185, pp. 439–40." *State* v. *DeMatteo,* 186 Conn. 696, 702–703, 443 A.2d 915 (1982). The defendant claims that the first of these dangers was realized by the admission into evidence of the defendant's alleged "pass" at A, because the testimony had "a tendency to excite the passions or influence the judgment of the jury." We do not agree.

Certainly, it is fanciful in this day and age to claim that flirtatious conversation, even if unnecessarily suggestive, is sufficient to inflame the passions of a jury. The incident testified to by A involved alleged verbal remarks made by the defendant and did not involve any physical contact or outrageous behavior that would have unduly aroused the jury's emotions, hostility or sympathy. The trial court did not abuse its discretion in determining that the prejudicial effect of the challenged testimony did not require its exclusion. Accordingly, the trial court did not err in admitting into evidence testimony concerning the alleged pass made at A by the defendant.

There is no error.

In this opinion the other justices concurred.