[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO COMPEL #104
The following facts are alleged in the plaintiff's action. The plaintiff, Nicholas J. Exarchou, M.D., brought this action on February 28, 1992, in a three count complaint alleging claims for violations of the plaintiff's constitutional due process rights, defamation of reputation and injunctive relief.
These claims arise from the defendants', Edward A. Kamens, M.D. and Connecticut Peer Review Organization, Inc.'s, review of the plaintiff's treatment of a patient at Fairfield Hills Hospital. Following the defendants' investigation of the plaintiff, the defendants issued a letter, dated October 10, 1991, indicating that the plaintiff was guilty of a serious breach of medical treatment, a violation of a level III protocol. The plaintiff was provided with some material but had no hearing and was not provided with the name, opinion or report of the experts used by the defendants.
As a result of the defendants' review and findings, t he plaintiff's privileges at the Fairfield Hills Hospital were removed and the plaintiff has been required by order of the acting chairman of psychiatry to change his practice of medicine.
On August 12, 1992, the plaintiff noticed the deposition of Dr. Kamens. On September 2, 1992 the plaintiff served upon Dr. Kamens a subpoena duces tecum requesting the production of the following:
CT Page 10129 To bring all files and records of the Connecticut Peer Review Organization, Inc. with respect to any and all investigation of Dr. Nicholas J. Exarchou, including all doctors' reports and information leading to the issuance of the letters of April 25, 1991 and October 10, 1991.
(Records, subpoena duces tecum, September 2, 1992.)
On September 8, 1992, the defendants moved to quash the subpoena as to Dr. Kamens and the records on the ground that all of the requested information is privileged and confidential and undiscoverable under federal statute and regulations, 42 U.S.C.A. Sec. 1320c et seq. and 42 C.F.R. § 476.132-143.
On September 10, 1992, the plaintiff moved to compel production of the requested information and documents arguing that the federal statute and regulations prohibiting disclosure of the defendants' deliberations are unconstitutional as applied to the present facts as violative of the guarantee of procedural due process. On October 13, 1992, this court heard argument on the plaintiff's motion to compel which is the subject of this memorandum of decision.
"The discovery rules are designed to facilitate trial proceedings and to make a trial less a game of blindman's b[l]uff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent. Caccavale v. Hospital of St. Raphael, 14 Conn. App. 504,507, 541 A.2d 893, cert. denied, 208 Conn. 812,541 A.2d 1241 (1988), quoting United States v. Proctor Gamble,356 U.S. 677, 682 (1958).
The "subpoena decus tecum", a copy of which is attached hereto and marked Exhibit A was served pursuant to a discovery process wherein the Connecticut Peer Review Organization, Inc. (CPRO) considered and took certain action that impacted the plaintiff, psychiatrist. The plaintiff is trying to find out how and in what manner the conclusions are reached and by whom.
CT Page 10130 In order for the federal government to have some control over Medicare and Medicaid services and cost some sort of look-see arrangement was devised. Kwoun v. Southeast Mo. Prof. Standards Rev. Org'n, (Kwoun I.),632 F. Sup. 1091, 1092-93 (E.D.Mo. 1986). In effect, the federal government is saying if we are going to pay, we want to make sure there is a need and requirement for the service, that the performance of the service is done by those qualified. Id.
"In order to promote effective, efficient, and economical delivery of Medicare and Medicaid, Congress enacted the Professional Standards Review Organization Amendment to the Social Security Act, . . . Pub.L. No. 92-603, tit. II, 249F(b), . . . 42 U.S.C.A. Sec. 1320c et seq." Id., 1092. "This legislation established a system of external monitoring of institutionally based health care services which Congress intended would be free from the conflicts of interest inherent in the old in-house review methods." Id., 1093.
Under this system, Professional Standards Review Organizations (PSRO) who have a contractual relationship with the Health Care Financing Administration (HCFA), such as CPRO, "determine (1) whether particular institutionally based services are medically necessary, (2) whether they are of acceptable quality, and (3) whether appropriate care could effectively be provided on an outpatient basis or more economically in an inpatient facility of a different type. 42 U.S.C. § 1320c-4 (a)(1)." Id.
A reading of the code satisfies this court that Congress intended to protect the privacy of the recipient of the service, the patient. 42 U.S.C.A. Sec. 1320c-9; see also General Statutes Sec. 19-17b(d).
Congress also intended to protect from third-party detractors those parties who are supplying the services or procedure being reviewed as to quality, necessity or appropriateness of the service, treatment and or procedure. Id.
The court is also satisfied that the Congress intended to have a clean unencumbered method of review where those sitting in review could and would be able to come to CT Page 10131 conclusions and express them freely within the confines of the review body without fear or reprisal, attack, and or liability. Kwoun v. Southeast Mo. Prof. Standards Rev. Org'n, (Kwoun II., 811 F.2d 401, 409 (8th Cir. 1987). Free and open discussion without the threat or promise either direct or implied. Id.
The majority of opinions which uphold the non-disclosure of the peer review organization's deliberations are based on two important public policies, protection of physician-patient confidentiality and immunity from reprisal by civil suit arising from the deliberation of the CPRO. Morse v. Gerity, 520 F. Sup. 470 (D.Conn. 1981); Pisel v. Stamford Hospital, 180 Conn. 314, 325 n. 2, 430 A.2d 1
(1980); Wilson v. Cedarcrest Regional Hospital, 5 CTLR 341 (December 18, 1991, Walsh, J.).
However, these cases are factually distinguishable from the case at hand. These previous decisions involved medical malpractice suits wherein a third party sought disclosure of the CPRO's deliberation in order to prove negligence on the part of the treating physician. Id. The plaintiffs in these medical malpractice actions were not privileged to the patients' medical or hospital records. Id.
In the present case, the confidentiality of the patient's report is really not in issue. The doctor being reviewed already has access to those reports which he has prepared and other reports, hospital and otherwise that he may have had access to when he was acting as the patient's treating psychiatrist. So as between the two parties to this suit at least some of the information is commonly possessed. It has not been sought by or for some third party.
As to the second public policy concern, the court held that the peer review organization's member physicians have absolute immunity from civil liability in connection with the deliberation process. Kwoun II., supra, 409. "In short, we are convinced that absolute immunity is "essential for the conduct of the public business," Butz,438 U.S. at 507, 98 S.Ct. at 2911, in this critical health care area." Id. Pursuant to Kwoun II., the CPRO's member physicians are immune from civil liability in connection with the organization's deliberation. Id. Therefore, the CT Page 10132 present case does violate the federal legislation's second public policy concern: implementation of the CPRO's supervisory function without fear of reprisal by civil suit.
What is unknown by the plaintiff — what is he seeking? The court assumes the plaintiff knows the conclusion of the "review." What he does not know is how and in what syllogistic form rendered the deductive conclusion. Is there some form of machination?
42 U.S.C.A. Sec. 1320c-9(d) provides:
 No patient record in the possession of an organization having a contract with the Secretary under this part . . . shall be subject to subpoena or discovery proceedings in a civil action. No document or other information produced by such an organization in connection with its deliberations in making determinations under section . . . 1320c-3(a)(1)(B) or 1320c-5(a)(2) [of this title] shall be subject to subpoena or discovery in any administrative or civil proceeding; except that such an organization shall provide, upon request of a practitioner or other person adversely affected by such a determination, a summary of the organization's findings and conclusions in making the determination. (Emphasis added.)
There has been no offer nor reference to what the plaintiff has requested as to "a summary of the organization's findings and conclusions in making the determination."
The plaintiff already has access to the patient's records and hospital reports as the treating physician. The question remains as to whether the plaintiff can obtain a summary of the CPRO's findings and conclusions in making its determination without documents or other information produced by the organization in connection with its deliberations in making its determination?
CT Page 10133 This question raises the issue of fundamental due process of law as provided for in the Fourteenth Amendment of the United States Constitution and Article I, Sec. 8 and Sec. 10 of the Connecticut State Constitution. U.S. Const. amend. XIV; Conn. Const., art. I., Sec. 8 and Sec.10.
First, for the due process clauses of the federal and state constitutions to apply there must be state action. State v. Holliman, 214 Conn. 38, 570 A.2d 680
(1990). The CPRO is a state actor pursuant to the enabling legislation of the Social Security Act.42 U.S.C.A. Sec. 1320c et seq. (1992). Although the CPRO is a private actor under contract with the federal government, the CPRO function as a state actor in overseeing compliance of the federal regulations by health care facilities and providers receiving federal funding though Medicare and Medicaid. Id. This constitutes significant government involvement to justify a finding of state action.
Second, the plaintiff must allege a deprivation of a constitutionally recognized property interest to be afforded procedural due process. Meeker v. Manning,540 F. Sup. 131 (D.Conn. 1982). "Mere damage to one's reputation, without implicating a more tangible interest such as employment, is insufficient to invoke procedural protection of the Due Process Clause." Sims v. City of New London,738 F. Sup. 638 (D.Conn. 1990), quoting Paul v. Davis, 424 U.S. 693,701 (1976).
In the present case, the plaintiff alleges harm not only to reputation, but also, that as a result of the peer review's report, the administration at Fairfield Hills Hospital denied the plaintiff the privilege of nightly practice at the health care facility which caused a reduction in the plaintiff's income. The court recognizes wages as a property interest entitled to the protection of procedural due process. Sniadach v. Family Finance Corp., 395 U.S. 337
(1969).
Congress has delegated the enforcement of sanctions with the Secretary of Health and Human Services and the CPRO. 42 U.S.C.A. Sec. 1320c-5(b). 42 C.F.R. § 466.71(d) provides that "[t]he PRO must carry out the responsibilities specified in . . . this title regarding imposition CT Page 10134 of sanctions on providers and practitioners who violate their statutory obligations under . . . the Act." 42 C.F.R. § 466.71(d). "Among these sanctions is the recommendation that the practitioner or provider be prohibited from participation in the reimbursement programs.42 U.S.C. § 1320c-9(b)(1) . . . ." Kwoun I., supra, 1093.
In the CPRO's annual report 1989-90, it delineates the sanctions and actions available to the CPRO. (Records, plaintiff's exhibit #2, p. 7). "The actions include notification, education, intensification, other interventions (including referral to the CPRO Quality Assurance Sanctions Committee for consideration), and consideration of the initiation of a sanction and coordination with the State Licensing Board." Id. It is evident that the CPRO's deliberation and subsequent report acted as a sanction which resulted in a deprivation of the plaintiff's property interest in his earnings.
Third, "[t]he constitutional due process requirements are satisfied where the complainant has had reasonable notice and reasonable opportunity to be heard and to present his claim or defense, due regard being had to the nature of proceeding and character of rights which may be affected by it." (Citation omitted.) Buck v. Morris Park, Inc., 153 Conn. 290, 293, 216 A.2d 187 (1965). In determining whether due process has been provided in given instance, court must consider "the private interest that will be affected by the official action, risk of erroneous deprivation of such interest through procedures used and the probable value, if any, of additional or substitute procedural safeguards, and the government's interest, including fiscal and administrative burdens that the additional or substitute procedural requirements would entail." Lake v. Speziale,580 F. Sup. 1318, 1337 n. 12 (D.Conn. 1984), quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976). "Due process clause of Fourteenth Amendment requires opportunity for hearing at a meaningful time and in a meaningful manner appropriate to the nature of the case." Schwartz v. Town Plan and Zoning Commission for Town of Hamden, 168 Conn. 20, 24,357 A.2d 495 (1975).
In the present case, the CPRO's deliberation process does not allow the plaintiff an opportunity to be heard and or to confront the evidence against him. Simply, CT Page 10135 the plaintiff was not afforded a pre-deprivation hearing on the merits. The action of the CPRO is found to be arbitrary and capricious.
This court is not holding that42 U.S.C.A. Sec. 1320c et seq. is unconstitutional on its face, rather that Congress could not have intended its application to be extended to the present facts. See Bodie v. Connecticut,401 U.S. 371, 379 (1971).
Congress clearly wanted to protect the confidential interests involved and to protect the parties from civil suit based on the CPRO's deliberation. Under the present facts neither of these public policy concerns are infringed upon.
The bases for the discovery process that is the subject of this motion is one in which the plaintiff, physician, is suing for monetary damages and injunctive relief. The federal statute, 42 U.S.C.A. Sec. 1320c et seq., was specifically enacted to prevent such suit. It might very well be that if a motion to strike or for summary judgment were to be filed that this complaint would be stricken or that summary judgment may be granted. Kwoun II., supra. If there were no such case, there would be no discovery and the motion before this court would be rendered moot.
No such motion to strike or for summary judgment has been filed by the defendants at this time. It is conceivable that the section of the federal statute,42 U.S.C.A. Sec. 1320c et seq., that protects the reviewing body, holding them harmless, not liable or exposed to such, may be constitutional. On the other hand, to deny a physician the right to practice at a certain place, at a certain time without hearing and also without the benefit of knowing how nor why that conclusion was arrived at is basically wrong. (Emphasis added.) See Bodie, supra.
Finally, "[t]he State's obligations under procedural due process are not simply generalized ones; rather, the State owes to each individual that process which, in light of the values of a free society, can be characterized as due." Id., 380.
For the reasons herein stated, this court concludes CT Page 10136 that the plaintiff's motion to compel the defendant to disclose documents or other information produced by the Connecticut Peer Review Organization in connection with its deliberations is granted even though said disclosure would violate the public policy concerns under the Professional Standards Review Organization Statute.42 U.S.C.A. Sec. 1320c et seq., because said disclosure is constitutionally required by procedural due process as established under theFourteenth Amendment of the United States Constitution and Article I, Sec. 8 and Sec. 10 of the Connecticut State Constitution.
It is so ordered.
JOHN WALSH, J.
[EDITORS' NOTE: EXHIBIT A IS ELECTRONICALLY NON-TRANSFERRABLE.]