******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROGERS, C. J., concurring. I agree with the majority opinion's conclusion that the due process clause of the Connecticut constitution, like that of the United States constitution, does not provide criminal defendants protection against allegedly unduly suggestive identification procedures undertaken by private individuals without the participation of state actors. Accordingly, the test governing the admissibility of evidence of such identifications, which this court essentially adopted as a common-law rule of evidence in *State* v. *Holliman*, 214 Conn. 38, 46, 570 A.2d 680 (1990), cannot be applied to evaluate the identification at issue in the present case because the defendant's claim of error pertaining to that identification has been raised for the first time on appeal.[1] I write separately to express my disagreement with the necessity for the special evidentiary rule of *Holliman* and to suggest that, when the issue squarely presents itself in a future appeal, this court abandon that rule and instead hold, as did the United States Supreme Court in *Perry* v. *New Hampshire*, U.S.    , 132 S. Ct. 716, 728–30, 181 L. Ed. 2d 694 (2012), that potentially unreliable eyewitness identifications resulting from suggestive procedures undertaken by private actors should be evaluated like any other potentially unreliable evidence—namely, by a fully informed, properly instructed jury within the confines of a trial employing the usual array of constitutional safeguards. In other words, no rule of admissibility should apply other than §§ 4-2 and 4-3 of the Connecticut Code of Evidence, which together provide, in short, that relevant evidence presumptively is admissible, unless the potential harm resulting from its admission outweighs its probative value.[2] I believe that this approach would adequately protect criminal defendants, particularly because of Connecticut's use of specialized jury instructions pertaining to eyewitness testimony and this court's recent recognition, in *State* v. *Guilbert*, 306 Conn. 218, 251–52, 49 A.3d 705 (2012), that criminal defendants may introduce expert testimony regarding the factors that may undercut the reliability of eyewitness evidence.

In the federal due process context, the United States Supreme Court, in *Neil* v. *Biggers*, 409 U.S. 188, 198–200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972), and *Manson* v. *Brathwaite*, 432 U.S. 98, 109–14, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977), adopted a two part test to govern the admissibility of evidence of eyewitness identifications that allegedly were the product of unnecessarily suggestive police procedures.[3] Thereafter, in *State* v. *Holliman*, supra, 214 Conn. 45–46, this court concluded that federal due process concerns were not implicated in the case of an allegedly unnecessarily suggestive identification procedure conducted by private parties alone,

yet held, nevertheless, that the same two part test applied to govern the admissibility of the evidence in question. When doing so, the court did not engage in any substantive analysis of the issue or provide any explanation of why this was necessary, but simply joined in the parties' agreement, apparently expressed at oral argument, that "the criteria established for determining the admissibility of identifications in the due process context are appropriate guidelines by which to determine the admissibility of identifications that result from procedures conducted by civilians." Id., 46.

More recently, the United States Supreme Court, in *Perry* v. *New Hampshire*, supra, 132 S. Ct. 730, confirmed that the federal due process clause does not require a trial court to make a preliminary reliability assessment of an eyewitness identification performed under suggestive circumstances when those circumstances were not arranged by law enforcement officials. After explaining that the primary aim of exclusion of eyewitness identification evidence pursuant to *Neil* v. *Biggers*, supra, 409 U.S. 188, and *Manson* v. *Brathwaite*, supra, 432 U.S. 98, was to deter improper police conduct; *Perry* v. *New Hampshire*, supra, 726–27; the court observed that many factors, aside from external suggestion, could raise the likelihood of a misidentification.[4] Id., 727. Acknowledging the importance and potential fallibility of identification evidence, the court nevertheless concluded that concerns over its reliability properly are addressed, not by a special rule providing for automatic judicial prescreening and potential exclusion, but by submission of the evidence to a jury for a credibility determination, within the context of a fair trial with all of its attendant safeguards. Id., 728. Those safeguards include: "the defendant's [s]ixth [a]mendment right to confront the eyewitness . . . [and] the defendant's right to the effective assistance of an attorney, who can expose the flaws in the eyewitness' testimony during cross-examination and focus the jury's attention on the fallibility of such testimony during opening and closing arguments. [Additionally,] [e]yewitness-specific jury instructions, which many federal and state courts have adopted, likewise warn the jury to take care in appraising identification evidence. . . . [Furthermore,] [t]he constitutional requirement that the government prove the defendant's guilt beyond a reasonable doubt also impedes convictions based on dubious identification evidence. State and federal rules of evidence, moreover, permit trial judges to exclude relevant evidence if its probative value is substantially outweighed by its prejudicial impact or potential for misleading the jury. [Finally,] [i]n appropriate cases, some [s]tates also permit defendants to present expert testimony on the hazards of eyewitness identification evidence."[5] (Citations omitted; footnote omitted.) Id., 728–29.

I believe that this court, in a future case involving an

allegedly unduly suggestive private eyewitness identification procedure, should abandon the rule of *Holliman* and adopt the more general approach approved in *Perry*. As the court in *Perry* observed, there are many factors that potentially can render an eyewitness identification unreliable; see id., 727; and I can conceive of no reason to have a different approach for dealing with one than for dealing with the others. Moreover, it is unclear that a court is any better suited to assessing the reliability of a particular eyewitness identification than is a jury, the traditional arbiter of fact. Connecticut's model jury instructions concerning eyewitness identifications provide detailed guidance to jurors regarding the importance and potential fallibility of such evidence, the factors that may affect its accuracy and the state's high burden of proof on the issue of identity, and they specifically mention the suggestiveness of procedures as a circumstance that merits consideration.[6] Additionally, and importantly, this court recently overruled earlier case law to hold that a criminal defendant may introduce expert testimony regarding the various factors that have an adverse effect on the reliability of eyewitness identifications, as long as the expert is qualified and the testimony is relevant to a specific eyewitness identification at issue in the case.[7] *State* v. *Guilbert*, supra, 306 Conn. 221, 251–52, 257. In light of this decision, defendants have a powerful tool with which to challenge eyewitness testimony resulting from suggestive identification procedures, and jurors should be well equipped to assess such evidence.[8]

Finally, even in the absence of a special exclusionary rule, general evidentiary rules remain available to prevent the admission of eyewitness identification evidence that, for whatever reason, bears such indicia of unreliability or unfairness that any potential relevance it may have is negligible. See *People* v. *Marte*, 12 N.Y.3d 583, 590, 912 N.E.2d 37, 884 N.Y.S.2d 205 (2009) ("we do not rule out the possibility that a court, in balancing probative value against prejudicial effect, may find some [eyewitness identification] testimony so unreliable that it is inadmissible"), cert. denied, 559 U.S. 941, 130 S. Ct. 1501, 176 L. Ed. 2d 117 (2010); *State* v. *Pailon*, 590 A.2d 858, 863 (R.I. 1991) ("[i]t is conceivable that identification evidence might become so unreliable as to fall below the threshold of competence [required by rules of evidence]"); *State* v. *Hibl*, 290 Wis. 2d 595, 609, 714 N.W.2d 194 (2006) ("Although most such identifications will be for the jury to assess, the [trial] court still has a limited gate-keeping function. It may exclude such evidence under [the rules of evidence] if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.").

For the foregoing reasons, I believe that the rule adopted in *Holliman* providing for judicial prescreening

and the possible exclusion of certain eyewitness identifications, not arranged by state actors, should be discarded. In lieu of that rule, eyewitness identification evidence resulting from allegedly unduly suggestive procedures orchestrated by private actors should, like any other evidence of questionable reliability, be presumptively admissible and subject to evaluation by a jury. Because the issue of the appropriateness of the existing rule is not directly presented by this case, however, I concur in the judgment of the majority.

[1] In likely recognition that an unpreserved *Holliman* claim, which is evidentiary in nature, would fail under the second prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), the defendant has requested that this court fashion a new state constitutional rule governing the admissibility of allegedly unduly suggestive identifications that did not result from state action, and then to apply that rule to his case. The majority properly declines to do so.

[2] Section 4-2 of the Connecticut Code of Evidence provides: "All relevant evidence is admissible, except as otherwise provided by the constitution of the United States, the constitution of this state, the Code [of Evidence] or the General Statutes. Evidence that is not relevant is inadmissible."

Section 4-3 of the Connecticut Code of Evidence provides: "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

[3] "In determining whether [police administered] identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, *if it is found to have been so*, it must be determined whether the identification was nevertheless reliable based on examination of the totality of the circumstances." (Emphasis in original; internal quotation marks omitted.) *State* v. *Outing*, 298 Conn. 34, 47–48, 3 A.3d 1 (2010), cert. denied, U.S. , 131 S. Ct. 1479, 179 L. Ed. 2d 316 (2011). As to the second prong, "the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil* v. *Biggers*, supra, 409 U.S. 199–200.

[4] Those factors include, "for example, the passage of time between exposure to and identification of the defendant, whether the witness was under stress when he first encountered the suspect, how much time the witness had to observe the suspect, how far the witness was from the suspect, whether the suspect carried a weapon, and the race of the suspect and the witness." *Perry* v. *New Hampshire*, supra, 132 S. Ct. 727.

[5] The holding in *Perry* reflects the approach of a majority of courts. See Annot., 86 A.L.R.5th 475, § 2 [a] (2001) ("The majority of courts require that an allegedly suggestive pretrial encounter be the result of either police or prosecution action to have an effect on the admissibility of in-court identification. . . . In cases in which [various privately conducted identification procedures of questionable reliability have been employed], courts typically deem the in-court identification admissible without any further inquiry into the suggestiveness of the pretrial encounter or any possible taint it may have on the in-court identification.").

[6] Connecticut's model jury instruction regarding eyewitness identifications provides in relevant part: "The state has the burden of proving beyond a reasonable doubt that the defendant was the perpetrator of the crime. . . . Identification is a question of fact for you to decide, taking into consideration all the evidence that you have seen and heard in the course of the trial. . . . In arriving at a determination as to the matter of identification, you should consider all the facts and circumstances that existed at the time of the observation of the perpetrator by each witness. In this regard, the reliability of each witness is of paramount importance, since identification testimony is an expression of belief or impression by the witness. Its value depends upon the opportunity and ability of the witness to observe the perpetrator at the time of the event and to make an accurate identification

later. It is for you to decide how much weight to place upon such testimony. . . .

"In appraising the identification of the defendant as the perpetrator by any witness, you should take into account whether the witness had adequate opportunity and ability to observe the perpetrator on the date in question. This will be affected by such considerations as the length of time available to make the observation; the distance between the witness and the perpetrator; the lighting conditions at the time of the offense; whether the witness had known or seen the person in the past; the history, if any, between them, including any degree of animosity; and whether anything distracted the attention of the witness during the incident. You should also consider the witness's physical and emotional condition at the time of the incident, and the witness's powers of observation in general. . . .

"Furthermore, you should consider the length of time that elapsed between the occurrence of the crime and the identification of the defendant by the witness. You may also consider the strength of the identification, including the witness's degree of certainty. Certainty, however, does not mean accuracy. You should also take into account *the circumstances under which the witness first viewed and identified the defendant, the suggestibility, if any, of the procedure used in that viewing,* any physical descriptions that the witness may have given to the police, and all the other factors which you find relating to reliability or lack of reliability of the identification of the defendant. . . .

"You may consider whether the witness at any time either failed to identify the defendant or made an identification that was inconsistent with the identification testified to at trial. . . .

"You will subject the testimony of any identification witness to the same standards of credibility that apply to all the witness[es]. When assessing the credibility of the testimony as it relates to the issue of identification, keep in mind that it is not sufficient that the witness be free from doubt as to the correctness of the identification of the defendant; rather, you must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may find (him/her) guilty on any charge. . . .

"In short, you must consider the totality of the circumstances affecting the identification. Remember, the state has the burden to not only prove every element of the crime but also the identity of the defendant as the perpetrator of the crime. You must be satisfied beyond a reasonable doubt of the identity of the defendant as the one who committed the crime, or you must find the defendant not guilty. If you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty." (Emphasis added.) Connecticut Criminal Jury Instructions § 2.6-4 (4th Ed. 2013), available at http://jud.ct.gov/JI/Criminal/part2/2.6-4.htm (last visited July 18, 2014).

[7] We generally approved of expert testimony on the following nonexhaustive list of propositions: "(1) there is at best a weak correlation between a witness' confidence in his or her identification and the identification's accuracy; (2) the reliability of an identification can be diminished by a witness' focus on a weapon; (3) high stress at the time of observation may render a witness less able to retain an accurate perception and memory of the observed events; (4) cross-racial identifications are considerably less accurate than identifications involving the same race; (5) memory diminishes most rapidly in the hours immediately following an event and less dramatically in the days and weeks thereafter; (6) an identification may be less reliable in the absence of a double-blind, sequential identification procedure; (7) witnesses may develop unwarranted confidence in their identifications if they are privy to postevent or postidentification information about the event or the identification; and (8) the accuracy of an eyewitness identification may be undermined by unconscious transference, which occurs when a person seen in one context is confused with a person seen in another." *State* v. *Guilbert*, supra, 306 Conn. 253–54.

[8] The holding in *Guilbert* was responsive to growing concerns that cross-examination, argument of counsel and generalized jury instructions were not always adequate to inform juries of the factors affecting reliability of eyewitness identifications. *State* v. *Guilbert*, supra, 306 Conn. 243–46.